torney, it appears that such an offer was the one intended to be accepted. It is difficult to base relief to the plaintiff, however, upon a bare mistake of law as to the effect of the offer of judgment. See Shepherd v. Moodhe, 150 N. Y. 183, 44 N. E. 963; Stillwell v. Stillwell, 81 Hun, 392, 30 N. Y. Supp. 961; Frudenheim v. Raduziner, 10 Misc. Rep. 500, 31 N. Y. Supp. 194. These cases seem to construe an offer of judgment and its acceptance as an accord and satisfaction. The plaintiffs' attorney, however, has accepted the offer, and has sworn to his authority so to do. It is possible, if it should appear that the plaintiffs' attorney was not authorized to accept the offer as it has now been construed by this court, upon that fact being shown the court might grant the plaintiffs relief in the premises. Without deciding, however, that such facts would authorize relief to the plaintiffs, it is enough to say that, without such fact appearing, sufficient facts are not here shown to authorize the court to relieve the plaintiffs.

The order must be modified so as to strike therefrom that provision authorizing the continuance of the action as to the first cause of action stated in the complaint, and, as thus modified, should be affirmed, with $10 costs and disbursements to the appellant. All concur.

---

(42 Misc. Rep. 22.)

CEBALLOS et al. v. MUNSON S. S. LINE.

(Supreme Court, Trial Term, Kings County. November, 1903.)

1. CONTRACT—RIGHT TO TERMINATE—INDEFINITENESS.
    An agreement between two steamship lines to pay reciprocal commissions on cattle carried by or for each from Gulf ports and American or Mexican ports to Cuba, as long as any cattle should be imported to Cuba, and until the shipping trade in cattle should end by reason of said island being restocked, is a contract for such an indefinite time, not dependent on the happening of any certain event, that it may be terminated at any time on reasonable notice in good faith.

Action by Juan M. Ceballos and others against the Munson Steamship Line. Motion for nonsuit. Granted.

John H. Corwin, for plaintiffs.
Everett Wheeler, for defendant.

ROGERS, J. The action is brought to recover commissions on freights alleged to have been contracted to be paid to the plaintiffs' predecessor, Juan M. Ceballos, with the defendant's predecessor, W. D. Munson, in shipping cattle from divers ports of North and South America to the Island of Cuba.

The allegations of the complaint as to the agreement are:

"That on or about the 11th day of October, 1887, the said Juan M. Ceballos * * * duly made and entered into an agreement with the said W. D. Munson, as follows: The said W. D. Munson thereby promised and agreed to pay to the said J. M. Ceballos & Co. (the said Ceballos doing business in that name), on all cattle carried by the said Munson Line to Cuban ports, when such business was procured or sent by said Ceballos & Co. to said Munson Line, commissions, as follows: On all cattle shipped to Cuba from Gulf ports, and from American or Mexican ports, five per centum on freight money re-

ceived by said Munson Line, where such freight should amount to less than seven dollars per head of cattle; when such freight should amount to seven dollars or more, and less than eight dollars, per head of cattle carried, six per centum of said freight; and, when such freight should amount to eight dollars or more per head of cattle carried, seven per centum of said freight. On all cattle shipped to Cuba from Columbia, Venezuela, and Honduras, five per centum on freight money received by said Munson Line, when such freight should amount to less than nine dollars per head of cattle carried; when such freight should amount to nine dollars or more, and less than ten dollars, per head of cattle carried, six per centum of said freight; and when such freight should amount to ten dollars or more, per head of cattle carried, seven per centum on such freight.

"It was further agreed, however, that on any of said trade obtained by said Munson Line, and not procured by J. M. Ceballos, commissions were to be paid by said Munson to said Juan M. Ceballos at one-half the rates aforesaid. In consideration in the agreement by said Munson to pay the commissions aforesaid, the said J. M. Ceballos thereby promised and agreed to pay said Munson at the rate of one-half the commissions aforesaid on freights on cattle to Cuba carried by said J. M. Ceballos & Co. in bottoms other than owned or operated by said Munson Line.

"It was further agreed between the said parties that such commissions were to be paid as aforesaid by each of said parties to the other as long as any cattle should be imported into Cuba, and until the shipping trade in cattle should end by reason of said island being restocked."

After the making of this contract, and on the 29th day of December, 1898, the said Juan M. Ceballos made a copartnership agreement with Frederick R. Rohl, John S. Fisk, and Anderson C. Wilson, and contributed to the assets of said copartnership all his right, title, and interest in said contract; and said copartners (with the exception of said Rohl) are the plaintiffs herein. On the 3d day of February, 1899, the said Munson, with other persons, under the laws of this state, organized the defendant corporation. He thereupon became the owner of a majority of the stock and the president of said corporation, having the principal management of its business. Pursuant to said contract, large numbers of cattle were shipped to Cuba by the said W. D. Munson, individually, and, after the organization by said corporation, by it, and payments of said commissions were made to said Juan M. Ceballos individually, and, after the formation of the said copartnership, to said corporation, down to and including June 30, 1901; the sums so paid aggregating nearly $60,000. It does not appear that Ceballos or Munson, individually, carried any cattle after the formation of said copartnership and said corporation, respectively. On the 13th of June, 1901, the defendant wrote plaintiffs as follows:

"Cattle Commissions: We regret to be forced to discontinue payment of commissions to your good selves after July 1st. The rates are now so much lower than they were and the competition is so keen, that we are sorry not to be able to pay these commissions any longer. We know you will understand the matter and our regret at being unable to continue the former arrangement.                    C. W. Munson, Vice-President."

No complaint is made as to commissions down to and including June 30th, but recovery is sought for those alleged to have accrued from that day to September 20th, following. The evidence on the part of plaintiffs to sustain the allegations of the complaint as to the length of time this contract should continue was given by Mr. Rohl:

"Mr. Munson, Mr. Place, and myself were the only three persons at that interview. We discussed different interests, and agreed then to the commis-

sions as stated in that little memorandum of that time. Q. What was said, if anything, as to the length of time that arrangement was to continue? A. The question was discussed as to how long it would take to restock the Island of Cuba, on which point we differed; Mr. Munson thought four or five years; I thought, perhaps, eight or ten; and it was then agreed that the commissions should be for—during the time that either Ceballos or the Munson Line or W. D. Munson Line, at the time, should carry any cattle. Q. Should carry cattle? A. Should carry cattle; yes, sir. Q. However long it might be? A. However long it might be; yes, sir."

The defendant contends: (a) That the contract is so uncertain as to its duration that it should be held to be a contract at will, and (b) that it is not binding upon the defendant as the successor of the original party thereto. When "the shipping trade in cattle should end by reason of said island being restocked" is clearly an indefinite time. It is not dependent upon the happening of a certain event, for we cannot know that the island ever will be restocked; and, if not, must the defendant be perpetually bound by the agreement? Must payment of commissions be continued without limitation? Sensible 'men would not enter into such an engagement, yet by its terms, as stated in the complaint, the results suggested would be possible. Again, what shall constitute a restocking; from whom, and how, shall the fact be ascertained? Many other queries looking to the absurdity of the contract, as alleged in the complaint, might be suggested. It seems to me, therefore, that the defendant's objection is well founded; that the contract is so uncertain as to time that it might properly be said to contain no time for its continuance; and, therefore, that either might terminate it whenever he should see fit, provided always that the notice be a reasonable one, and that it be made in good faith. Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 38 Am. Rep. 441; Martin v. New York Life Ins. Co., 148 N. Y. 117; Gilbert v. Quinlan, 59 Hun, 508, 13 N. Y. Supp. 671; Hart v. Thompson, 39 App. Div. 668, 57 N. Y. Supp. 334; Castle v. Marks, 50 App. Div. 320, 63 N. Y. Supp. 1039. If, however, the time be restricted to that stated by the plaintiff's witness, Rohl, that it should be continued so long as "either Ceballos or the Munson Line—or W. D. Munson at the time—should carry any cattle," then the contract has expired by its own terms, because Mr. Ceballos, as an individual, ceased business when he formed a copartnership between himself and his coplaintiffs on the 29th of December, 1898. Mr. Munson likewise ceased to carry cattle when his business was incorporated February 3, 1899. There is nowhere in the evidence, as I recall it, any express undertaking on the part of the plaintiffs' copartnership of the defendant corporation by which the contract was assumed by either or agreed to be continued for any particular time. Simson v. Brown, 68 N. Y. 355; Garnsey v. Rogers, 47 N. Y. 233, 7 Am. Rep. 440; Roe v. Barker, 82 N. Y 431.

A case of novation was not made out. Griggs v. Day, 136 N. Y. 152, 160, 32 N. E. 612, 18 L. R. A. 120, 32 Am. St. Rep. 704. Of course, so far as the original parties and their successors have executed the contract, there is no controversy. Its validity cannot be challenged; but as an executory agreement—and it should be treated as such from July 1, to September 20, 1901—I do not see how it is binding upon this defendant.

If these views are correct, it will not be necessary to consider the other interesting questions, which have been ably presented by the briefs of the respective counsel. The motion for a nonsuit is granted.

Motion granted.