CLARK R. GRIGGS, Respondent, *v.* MELVILLE C. DAY et al., as Surviving Executors, etc., Appellants.

A wrongful sale by a creditor of collateral security placed in his hands by the debtor is a conversion thereof, and discharges the debt to an amount equal to the actual, not the face value of such security.

Where the security is a promissory note or obligation of a third party, the amount unpaid thereon at the time of the conversion with interest is *prima facie* the measure of damages in an action for such conversion, but the defendant may show, in reduction of damages, the insolvency of the maker, or any other fact impugning the value of the security.

Entries made by a party to an action for an accounting in his books of accounts, without the authority of and undisclosed to the opposite party, or not adopted by him when disclosed, do not bind the former, and are entitled to no more weight against him than oral declarations or admissions made by him to a third person.

Plaintiff, as security for moneys loaned, transferred to G., defendant's testator, certain promissory notes made by a railroad company, Thereafter without the consent of plaintiff, G. took from the company its second mortgage bonds at seventy-five per cent of their par value, and surrendered to it a portion of the said notes, crediting plaintiff with such proportionate amount; the balance of the notes G. also surrendered without consideration, charging the company with the amount in open account upon his books. At the time the company was insolvent, and neither its notes nor the bonds so received were of any actual value. Plaintiff repudiated the transaction and in an action for an accounting; the referee charged defendants with the face value of the notes so surrendered. *Held*, error; that plaintiff having repudiated could not claim a purchase of the notes by G., who simply became liable as for a wrongful conversion thereof, and the measure of damages was their actual, not their face value; and that G. was not bound by the amount credited to plaintiff in his books of account.

*Garlick* v. *James* (12 Johns. 146); *Hawks* v. *Hinchcliff* (17 Barb. 492), distinguished.

(Argued October 27, 1892; decided November 29, 1892.)

CROSS-APPEALS from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made May 9, 1892, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Melville C. Day* for appellants. To the extent of their invalidity as obligations of the company, the certificates of indebtedness can afford no basis for a charge against defendants. (*Booth* v. *Powers*, 56 N. Y. 27; *Quinn* v. *Lloyd*, 41 id. 352.) If the plaintiff, after the entries came to his knowledge, had not rejected, but had elected to ratify and adopt them, this adoption would have constituted Garrison the unqualified purchaser of the certificates at the price of seventy-five per cent as specified in the original entry. (1 Greenl. on Ev. § 901; 1 Phil. on Ev. 406, 409, 411; *Rouse* v. *Whited*, 25 N. Y. 170, 175, 176; *Grattan* v. *Ins. Co.*, 93 id. 284; *Gildersleeve* v. *Landon*, 73 id. 609; *Moore* v. *Wright*, 90 Ill. 470; Story on Agency, § 250; 1 Pars. on Cont. 51; *Benedict* v. *Smith*, 10 Paige, 126; *Bank* v. *Meyers*, 2 Wkly. Dig. 214; *Daniels* v. *Brodie*, 54 Ark. 216; *Dewey* v. *Hotchkiss*, 30 N. Y. 497; *Pendleton* v. *Wood*, 17 id. 72, 76; *Biglow* v. *Sanders*, 22 Barb. 146, 148; *Clinton* v. *Rowland*, 24 id. 634; *Winants* v. *Sherman*, 3 Hill, 74; *Waggoner* v. *Greggs*, 2 H. & M. 603; *Jones* v. *Jones*, 4 id. 447; *Morris* v. *Herst*, 1 Wash. C. C. 433; *Waldron* v. *Sherman*, 15 Johns. 409, 424; *Griffith* v. *Ketchum*, 12 id. 379, 380.) No charge should have been made against defendants on account of the balance of the certificates, amounting to $326,043.13, which were not exchanged for bonds. (*G. F. Ins. Co.* v. *Marr*, 46 Penn. St. 504; *Hunter* v. *Moul*, 98 id. 13; *Burdict* v. *Green*, 15 Johns. 247; *Potter* v. *M. Bank*, 28 N. Y. 642–655; *Vose* v. *R. R. Co.*, 50 id. 369; *Booth* v. *Powers*, 56 id. 27; *Thayer* v. *Manley*, 73 id. 305–308.)

*Esek Cowen* for appellants. The referee erred in finding the eighth, ninth and tenth conclusions of law, the effect of

which is to charge the defendants with notes or certificates, issued to the plaintiff and held by Garrison as collateral security, to the amount of $2,062,643.13, because the uncontradicted evidence is that on or before May 1, 1883, Garrison did purchase this $2,062,643.13 of notes at the rate of seventy-five cents on the dollar, and did agree to credit the plaintiff with the amount of said notes, less twenty-five per cent discount. (*Vibbard* v. *Staats,* 3 Hill, 143 ; *Brewster* v. *Doane,* 2 id. 537 ; *Ames* v. *Middleton,* 2 Barb. 571.) The referee also erred, even upon the assumption that the purchase of the notes at seventy-five cents on the dollar was not proved, in charging the defendants with the sum of $1,736,600, being the value of the 2,280 second mortgage bonds at seventy-five per cent of their face. (*Low* v. *Payne,* 4 N. Y. 247 ; *Dewey Hotchkiss,* 30 id. 497.) The referee erred in charging the defendants with the sum of $326,043.13, being the balance of the notes surrendered to the company after deducting $1,736,600, which were exchanged for second mortgage bonds, and in refusing to find upon the question of the actual value of such notes, on the ground that such value was immaterial. (*Garlick* v. *James,* 12 Johns. 150 ; *James* v. *Corning,* 82 N. Y. 449.)

*John H. Post* for respondent. Inasmuch as the appellants have taken no objection to the admission or exclusion of evidence upon the trial, the only grounds upon which they can assail the judgment are their exceptions to the referee's report, and to his rulings upon their requests to make findings of fact and conclusions of law. (Code Civ. Pro. § 1337 ; *Musgrave* v. *Buckley,* 114 N. Y. 506, 510, 511 ; *West* v. *Van Tuyl,* 119 id. 620 ; *Ensign* v. *Ensign,* 120 id. 655 ; *Reynolds* v. *Robinson,* 82 id. 103, 106 ; *Derham* v. *Lee,* 87 id. 599, 604, 605 ; *Quincy* v. *White,* 63 id. 370, 375 ; *Potter* v. *Carpenter,* 71 id. 74, 75.) None of the appellants' exceptions to the referee's report point out any material error on his part, and, therefore, none of them call for a reversal of the judgment. (*Roberts* v. *Tobias,* 120 N. Y. 1 ; *Smith* v. *Scholtz,*

68 id. 41; *Daniels* v. *Smith*, 130 id. 696.) The creditor holds all collaterals as a trustee, to be collected for the benefit of the debtor, and whenever he transfers them absolutely, without authority, he takes them at their face in satisfaction, to that extent of the principal debt. The debtor can ask nothing more, and he is not obliged to accept anything less. (Edw. on Bail, § 319; *Hawks* v. *Hincliff*, 17 Barb. 492, 502; *Vose* v. *F. R. R. Co.*, 50 N. Y. 374, 375; *G. Bank* v. *Frost*, 11 J. & S. 124; *Beach* v. *Endress*, 51 Barb. 570; *Cadens* v. *Teasdale*, 53 Vt. 469.) The delivery by the company to Garrison of the 2280 bonds at the agreed price of seventy-five per cent was equivalent to the payment of so much money by the company upon its notes. (*Howard* v. *Norton*, 65 Barb. 161, 169; 1 Story Eq. Juris. § 468; 1 Pom. Eq. Juris. §§ 1063, 1076.) Appellant's exceptions to the findings of fact are untenable. (Code Civ. Pro. § 992; *E. C. F. Co.* v. *Hersee*, 103 N. Y. 28; *Hannigan* v. *Allen*, 127 id. 639; *Wetmore* v. *Bruce*, 118 id. 319; *Reynolds* v. *Robinson*, 82 id. 103; 1 Greenl. on Ev. §§ 41, 42.) The judgment must be affirmed unless the appellants have, by their exceptions, pointed out one or more fatal errors committed by the referee in his refusals to make findings of fact and conclusions of law as requested by them. (*Andrews* v. *Raymond*, 58 N. Y. 676; *Baldwin* v. *Doying*, 114 id. 452; *Callanan* v. *Gilman*, 107 id. 360.) The appellants argued before the General Term that the notes given by the railroad company to the respondent, and by him transferred to Garrison as collateral security, were never valid obligations of the company, and that, therefore, the respondent was not entitled to the credits given to him by the referee therefor on the accounting. They cannot urge this argument before this court. (*Wicks* v. *Thompson*, 129 N. Y. 634; *Adams* v. *I. N. Bank*, 116 id. 606; *Post* v. *M. R. Co.*, 125 id. 697.) The entries made in Garrison's books without the respondent's knowledge or consent were not competent to charge him with a sale of the notes to Garrison. (*Peck* v. *Von Keller*, 76 N. Y. 604; *Ostrander* v. *Hart*, 130 id. 406.) The judgment is right, so

far as it goes, and does substantial justice between the parties. (*Fairchild* v. *Fairchild*, 64 N. Y. 471; *West* v. *Van Tuyl*, 119 id. 621; *Ostrander* v. *Hart*, 130 id. 406; *Smith* v. *Pettee*, 70 id. 13.)

EARL, Ch. J. This action was brought against Cornelius K. Garrison, since deceased, for an accounting. It was referred to a referee and he ordered judgment in favor of the plaintiff for upwards of $188,000. The record is very voluminous, and in the briefs submitted and the arguments of counsel many . questions of law and fact were presented for our considera- tion. A careful study of the record has satisfied me that the judgment appealed from is both illegal and unjust.

In September, 1879, the plaintiff entered into a contract with the Wheeling and Lake Erie Railroad Company, an Ohio corporation, for the construction and equipment of its line of railroad in that state, according to the specifications and upon the terms and conditions mentioned in the contract. By one of the provisions of the contract the railroad company was "to furnish the contractor available subscriptions or pro- ceeds thereof and aid to the amount of $4,000 per mile of main track, branches and sidings, or so much as may be neces- sary to furnish right of way, grade, bridge and tie said rail- road between Hudson and Martins Ferry," a distance of 143 miles, and "to use its best endeavors to secure for the con- tractor available subscriptions and to aid to the extent of $4,000 per mile, or so much as may be necessary," for a simi- lar purpose as to the balance of the road, a distance of 58 miles. For the performance of this contract, besides the aid to be furnished as above stated, the plaintiff was to receive bonds and stock of the company. He was without financial ability, and he applied to Garrison for financial aid to enable him to perform his contract; and upon his application Garri- son, from time to time, advanced him large sums of money, amounting in all, besides interest, to nearly $4,500,000. For the money so advanced the plaintiff assigned and delivered to Garrison as collateral security his construction contract and

bonds and stock of the company, and some of it was repaid by the sales to him of bonds and stock. In 1882 the plaintiff received from the company for extra work claimed to have been done by him, and on account of its failure to perform the portions of the contract above quoted, its promissory notes, amounting to $1,949,710.72, and they were delivered by him to Garrison for moneys advanced and to be advanced by him for the construction of the road. Garrison held these notes until May, 1883, when there was due to him for moneys advanced to the plaintiff for the construction of the road nearly $2,500,000. He then received from the company 2,280 of its second-mortgage bonds of the denomination of $1,000, at seventy-five cents on the dollar, amounting, with some interest, to $1,736,600, to apply upon his claims, and he then surrendered to it all of the above-mentioned promissory notes, and they were canceled. On the same day he caused an original entry to be made in his journal, one of his account books, as follows: "This amount of notes and interest, $2,062,643.13, taken from contractor at 75 per cent, $1,546,982.35." He then charged the company in his books of account with the whole amount of the notes and interest, and gave it credit for $1,736,600, the price, including interest, at which he took the second-mortgage bonds, and he credited the plaintiff with the sum of $1,546,982.35. The difference between the total amount due upon the notes and the amount allowed by him for the second-mortgage bonds was $326,043,13; and thus he had in his hands not used for the payment of the bonds the notes to that amount, which he then surrendered to the company without any consideration whatever; and, as the referee found, he elected to look to the company as his debtor on open account for that amount. The referee also found that by reason of the surrender of the notes in consideration of the purchase of the bonds, and by reason of the surrender of the balance of the notes, and by reason of the election before mentioned, Garrison discharged the indebtedness of the plaintiff to him to the amount of the face value of the notes at the time of the surrender. He also found that the plain-

tiff's rights as pledgor in the construction contract and in the bonds, stock and other property transferred to Garrison as collateral security were never cut off by foreclosure of his rights, or in any other way.

These facts having been found by the referee, he found, among other conclusions of law, that the legal effect of the surrender by Garrison to the railroad company of the promissory notes held by him as collateral security for moneys advanced to the plaintiff, and of the charge by him against the railroad company of the full amount of the notes and interest, was to relieve the plaintiff from any liability to him for the amount thereof; and in the accounting he charged Garrison with the full amount of the notes, with interest. The only question which I deem it important now to consider, is whether the learned referee was right in making that charge.

The further fact must be taken into consideration that the notes surrendered were of no value as against the company. It was utterly insolvent, with property no more than sufficient to pay its first mortgage bonds. The second mortgage bonds were absolutely of no intrinsic value. The referee held these facts to be immaterial, and that under the circumstances, Garrison had made himself chargeable with the full amount of the notes, without reference to their value. Such a conclusion is somewhat startling, and should not be sanctioned, unless it has support in well recognized principles of law, or authorities which we feel constrained to follow.

The entries in Garrison's books of account in reference to these notes, have very little bearing upon the controversy between these parties. They were private entries made by Garrison, undisclosed to the plaintiff, and without his authority. They were important simply as evidence, and are entitled to no more weight than would have been the oral declarations or admissions of Garrison made to any third party. They show what use he made of the notes, and about that there is no dispute. They did not bind the plaintiff, and he has never, so far as appears, assented to them. They show that Garrison intended to take the notes at seventy-five cents on the dollar,

and that he was willing to allow the plaintiff that sum for them. But there was no actual purchase of them. If that entry had come to the knowledge of the plaintiff, and he had adopted it, and so notified Garrison, he could probably have held him to a purchase of the notes for that sum. But he repudiates that entry, and refuses to let Garrison have the notes for that sum. He cannot use that entry to fasten upon him a purchase of the notes at their face value. The minds of the parties never met upon such a contract. Garrison either purchased the notes used in exchange for the bonds at seventy-five per cent of their face value, or he did not purchase them at all. Therefore, as the plaintiff repudiates the purchase at the price named, there was no contract of purchase, and as to these notes, pledged for collateral security, Garrison must be held to have wrongfully converted them to his own use. It would make no difference whether we consider these notes as having been exchanged for the bonds, or as having been used in payment for the bonds. In either view, Garrison was, at most, guilty of a conversion of them.

As to the balance of the notes which were surrendered to the company without any consideration, there was simply a wrongful conversion of them. They had no value as obligations against the company, and it is preposterous to suppose that Garrison intended, by the surrender, to charge himself for their full face value against an indebtedness of the plaintiff to him for money actually loaned. By the surrender he did not intend to release the company from its indebtedness evidenced by the notes; but he intended and elected still to hold the indebtedness evidenced by his charge in open account upon his books. The obligation of the company was not impaired or lessened by the transaction, and it owed just as much after it as before. Even if he made the notes his own by surrendering them, there was simply a conversion of them. It is true that he elected to hold the company as his debtor upon open account, just as it was his debtor before for the same amount evidenced by the notes. He did not take a new debtor, but he retained, and intended to retain, the same

debtor. Here there was no novation, and nothing resembling it. It usually, if not always, takes three parties to make a novation, and they must all concur upon sufficient consideration in making a new contract to take the place of another contract, and in substituting a new debtor in the place of another debtor. Novation is thus briefly defined: A transaction whereby a debtor is discharged from his liability to his original creditor by contracting a new obligation in favor of a new creditor by the order of the original creditor. (1 Parsons on Contract, 217.) Here there was no element answering to this definition. There was no intention to make a novation, no consideration for a new contract, no concurrence of the three or even of the two parties.

So we reach the conclusion, as to all the notes, that Garrison, by their surrender, made himself liable for a wrongful conversion of them to his own use, and thus became responsible to the plaintiff for the damages caused by the wrong; and the question is, what were such damages? The answer must be, the value of the notes converted. There can be no other measure, as that measures the entire damage of the plaintiff absolutely.

As to the notes surrendered for the bonds, the plaintiff could have elected to take the bonds or their value, but this he refuses to do, as the bonds have no value, and thus he is confined absolutely to the value of the notes.

Now how does the case stand upon authority? In *Garlick* v. *James* (12 Johns. 146), the plaintiff deposited with the defendant a promissory note of a third person as collateral security for a debt, and the defendant without the knowledge or consent of the plaintiff compromised with the maker of the note and surrendered the note to him upon payment of one-half of the face thereof. It was found that the maker was at the time of the compromise abundantly able to pay the full amount of the note; and under such circumstances it was properly held that the pledgee was liable for the balance unpaid upon the note. In *Hawks* v. *Hinchcliff* (17 Barb. 492), the plaintiff sued the defendant upon an account for

merchandise delivered, and the defendant showed that the plaintiff took two notes for the amount of the account as collateral security for the payment thereof; that he transferred one of the notes to a person who recovered judgment thereon against the makers, and afterward assigned the judgment to one Prindle; that he recovered judgment upon the other note and assigned that to Prindle; and it appeared that the defendants in those judgments had never paid the notes or the judgments. It was held that the plaintiff, the pledgee, could not recover upon his account. It was not shown upon what consideration the notes and the judgments were transferred by the pledgee, or that at the time of the transfer the makers of the notes were not perfectly solvent. The plaintiff there relied upon the simple fact that the notes and judgments were not paid. Upon this state of the facts the court held that the presumption, nothing appearing to the contrary, was that the note and judgments were transferred by the plaintiff for the full amount appearing to be due upon them, and hence he was charged with the full amount. There are some broad expressions contained in the opinion which when isolated from the facts of the case tend to give some countenance to the plaintiffs' contention here. In *Vose* v. *Florida Railroad Co.* (50 N. Y. 369), it was held that a wrongful sale by a creditor of collateral securities placed in his hands by the principal debtor, does not *per se*, discharge even a surety for the debt (much less the principal debtor), *in toto*, but that by such sale the creditor makes the securities his own to the extent of discharging the surety only to an amount equal to their actual value. In *Potter* v. *Merchants' Bank* (28 N. Y. 641), *Booth* v. *Powers* (56 id. 22), and *Thayer* v. *Manley* (73 id. 305), it was held that in an action to recover damages for the conversion of a promissory note, the amount appearing to be unpaid thereon at the time of the conversion with interest, is *prima facie* the measure of damages, but that the defendant has the right to show in reduction of damages the insolvency or inability of the maker, or any other fact impugning the value of the note.

SICKELS—VOL. XCI.    21

In the *Exeter Bank* v. *Gordon* (8 N. H., 66) where the bank had received a note as collateral security and had subsequently, without the consent of the pledgor, compromised it by receiving the one-half thereof from the maker, it was held that the bank was bound to credit the pledgor with only the amount received upon compromise upon proof that the compromise was advantageous and that the maker was insolvent and unable to pay the balance, and the general rule was laid down which was announced in the cases last above cited.

If the pledgee of the note of an insolvent maker may surrender it upon a compromise for one dollar without being made liable for more than he receives, upon what conceivable principle can a pledgee be held for the face value of a worthless note by surrendering it without any consideration whatever? If one intrusted with a note as agent or holding it as pledgee loses it by his carelessness, or even willfully destroys it, he can, in an action against him by the principal or pledgor, be held liable only for the value of the note. If Garrison had broken into the plaintiff's safe and taken these notes without any right whatever, in an action for their conversion the plaintiff could have recovered against him as damages only the actual, not the face value of the notes.

I need go no further. Other illustrations are not needed. Our attention has been called to no case in law or equity which upholds the plaintiff's contention as to these notes. I should be greatly surprised to find any and do not believe there are any.

I have assumed, without a careful examination of the defendant's objections to the notes, that they were valid and properly issued by the company for their full amount. I have also assumed without examining the matter that upon this record we must hold against the contention of the defendants that the second mortgage bonds took the place of the notes given for them and were held in their stead as collateral security.

Statements made upon the argument by the counsel for the appellants rendered it unnecessary for us to consider any other

objections to the judgment, and for the reasons stated the judgment should be reversed and a new trial granted, costs to abide the event.

All concur; GRAY, J., in result.

Judgment reversed.