The defendant’s answer in .substance denies that he is indebted to the plaintiff in any sum whatever, and for a second defense, defendant admits that on the 30th day of May, 1903, he purchased the bull mentioned in the petition for $1,100 cash; but avers that the price, $1,100, was fully paid and settled for as *108 follows: Plaintiff for a valuable consideration agreed to, and did accept in full payment and satisfaction of $500 of the $1,100, E. S. Kelly’s promise to give him credit on his account in the sum of $500; that said plaintiff did accept said Kelly’s promise to give him credit on his account in the sum of $500 in full payment and satisfaction of $500 of the purchase price of said bull and did then and there release said defendant from the payment of the $500 of said $1,100, the purchase price of said bull.
The plaintiff by way of reply denied the allegations of the answer.
In this state of the proceedings the defendant was entitled'to first prove his defense as the answer by‘admitting the terms of the sale and the averment of satisfaction by a new and independent contract by way of novation, made the sole issue in the case and no other issue than the full payment or satisfaction of the indebtedness, which threw the proof upon the establishing of that sole issue upon the defendant. The averment of the second defense by its admissions took in and overshadowed the denial of there being nothing due until established by proof. In determining who must first introduce evidence under paragraph 3 of Section 5190, the whole pleadings must be considered and not a part merely of the pleadings. In this answer, by its admissions, if no evidence had been offered the plaintiff would have been entitled to a judgment, and being required first to produce his evidence under paragraph 6 of the same section, the defendant was entitled to close the argument. See Lewster v. Goddard, 25 O. S., page 276.
The defendant testified in substance that he purchased a bull of the plaintiff at his public sale on the 20th day of May, 1903, for the sum of $1,100, the sale being advertised for cash; that after the sale he asked the plaintiff to take his check for $600 and to receive a credit from E. S. Kelly, another stock dealer, for the sum of $500, the balance of the -purchase money which he claimed Kelly had agreed to give him the credit, as he had paid Mr. Kelly for another bull purchased of Mr. Kelly some time previous, which had not filled his warranty and which Mr. Kelly agreed with the defendant to take back. He did not testify that the plaintiff agreed to release and discharge him in *109 express terms, but that he understood that to be the effect of the same, as he agreed to take credit upon his individual account with Mr. Kelly; the defendant further testified that no consideration was paid in money for this agreement to take credit upon Kelly’s account.
The plaintiff testified in substance that no such agreement was made; but that he was willing to take Kelly’s check in lieu of the cash if he would get the same. ■
Mr. Kelly testified that he never agreed to give a check, nor to give him credit only upon the condition that he found that the bull sold by him to the defendant, after proper tests when returned thereafter to him would not come up to the warranty. That the plaintiff owed him on his account something over $100 and less than $200.
Some letters were introduced in evidence between the parties, but threw little light upon the main question.
. The court charged the jury, among other things, that the burden of proving the averments of the answer as to giving a release of the original contract as averred, was with the defendant; that before the defendant would be entitled to a verdict in his favor the jury must find that the plaintiff, the defendant and Mr. Kelly, all agreed to the substitution of Mr. Kelly as the party to pay the balance of the indebtedness remaining unpaid by the defendant to the plaintiff, upon his admission of his obligation to pay the plaintiff cash.
The jury brought in a verdict, upon the evidence and charge, in favor of the defendant, and the plaintiff filed his application for a new trial, for reasons, among others, that the verdict was manifestly against the evidence; that the court erred in holding that the defendant had the right to open and close the argument ; that the verdict was contrary to law.
The court did not sustain the motion on the ground that the defendant had the opening and close of the argument, for the reason that the single issue before the jury under the pleadings was the satisfaction of the plaintiff’s claim as averred in his answer.
The court granted the motion upon two grounds: First, that it was clearly against the evidence and also that the same is con *110 trary to law, and that the verdict should have been for the plaintiff for the full amount claimed.
It is well settled that to constitute a novation of parties there must have been a release, discharge and extinguishment of the old debt by a mutual agreement of all the parties, whereby it becomes the obligation of the new debtor. Cromwell v. Megins, 39 Minn., page 407.
In ease of the substitution of a new obligation for the old one, the contract must be a valid one upon which the creditor can maintain his remedy against the new party. Spychu v.--, 74 Wisconsin, p. 456; Kelso v. Fleming, 104 Ind., p. 130.
Novation is a transaction whereby a debtor is discharged from liability to his original creditor by contracting a new obligation in favor of a new creditor, by order of the original creditor. Griggs v. Day, 136 N. Y., 152; 32 American State Reports, p. 704.
The doctrine of novation was derived from the Roman law. Its general meaning in that system of jurisprudence is the act of substituting one contract for another.
This might be either by putting a new contract of the debtor himself in the place of an existing one, or that of a third person, the original debt in either case to be discharged. The first was more strictly termed novation; the second delegation. The novation of the English and American law corresponds to the delegation of the Roman law, which Dormat describes “the change of one debtor for another, when he who was indebted substitutes a third person who obligates himself in his stead to the creditor, so that the first debtor is acquitted and his obligation is extinguished and the creditor contents himself with the new debtor.”
Now, applying this to the case at bar, the plaintiff Charles L. Gerlaugh was the creditor, W. G. Riley was the original debtor, E. S. Kelly was to be substituted debtor as claimed by the defendant.
The evidence does not show that all three of these parties ever agreed to the discharge of the original debtor. The only consideration, if any, for the alleged substitution of Kelly, the new alleged debtor, would be the release of the original debtor and the extinguishment of the original obligation, and this not hav *111 ing been proven, the contract of substitution was without consideration.
Martin & Martin, for plaintiff.
G. 8. Olinger, for defendant.
The verdict should have been, under the law and the evidence, for the plaintiff, and not for the defendant, and a new trial is therefore granted.