### BROOKE *v.* LOWE.

1. Before one can be held bound by the acts of another who assumes to represent him, due proof of agency must be made; and a letter purporting to have been dictated by a party against whom it is offered as an admission is not admissible in evidence in the absence of proof that he was in fact the author of it.

2. Where there has been a conversion of personal property, an offer by the wrong-doer to make amends by substituting like property in its stead will not relieve him of the consequences of his wrongful act; but where it is a disputed issue of fact whether there has been a conversion, rather than an innocent mistake committed in destroying certain promissory notes, evidence as to an offer to execute other notes to take their place may throw light on the transaction, as illustrating the good faith of the party who destroyed the notes.

3. After a plaintiff has closed his case, a motion for a nonsuit has been made by the defendant, and the court has announced that the motion will be sustained, it is usually discretionary with the court whether or not the plaintiff will then be permitted to reopen the case in order that he may introduce additional testimony which he might have offered before he closed his case.

4. When a plaintiff in a trover suit elects to take a money verdict, but wholly fails to show the value of the property alleged to have been converted by the defendant, no money recovery in favor of the plaintiff can be had, and the awarding of a nonsuit is proper.

Argued February 14, — Decided March 7, 1905.

Trover.     Before Judge Reid.     City court of Atlanta.     April 5, 1904.

*C. D. Maddox*, for plaintiff.     *Rosser & Brandon*, for defendant.

EVANS, J.     An action of trover was brought by G. W. Brooke against L. D. Lowe, to recover three promissory notes alleged to be in the possession of the defendant and to have been wrongfully converted by him.     One of these notes was for $537.50, payable to Brooke or order, and signed by The Lowe Brothers Cracker

Co.; another was for $337.50, payable to Brooke or order, and signed by that company; and the third was a note for $500.00, signed by one Everett, payable to L. D. Lowe and indorsed by him in blank.

1. On the trial of the case, this question was propounded to the plaintiff, while testifying as a witness in his own behalf: "Now, when did the $500 note leave your possession, and how?" In answer to this question, the plaintiff undertook to testify as to a transaction which occurred about the tenth of July, in regard to this note, between himself and Drew Wade, who was representing the Lowe Brothers Cracker Co. The court, however, on objection of the defendant, declined to allow the witness to testify concerning this transaction. He would have testified, if permitted to do so, that Wade came to his office and told him that Lowe said for him (the witness) to turn over to Wade the $500 note "to be discounted at their bank, and that the money on said note so discounted would be paid over to said Brooke, and that he, said Drew Wade, then and there agreed also to get $37.50 more and take up the $537.50 note." This testimony was excluded on the ground that it did not appear that Wade had authority to bind the defendant by any such statement. Agency can not be proved by the declarations of the person assuming to act as agent; and unless it appear by competent evidence that he is authorized to act for another, his sayings are inadmissible. It was not shown that Wade was authorized to represent the defendant. It does appear that the note for $500 principal, signed by Everett and indorsed in blank by the payee (Lowe), had been turned over to Brooke by the Cracker Company as collateral security for its indebtedness to him. As Wade was an officer of that company, and was acting as its representative on the occasion inquired about, the transaction between him and the plaintiff had no relevancy to any issue in the case. Besides, it would seem that the statement of Wade as to what Lowe said regarding the discounting of the Everett note had reference to what Lowe had said in his official character as the president of the Cracker Company, and not as an individual.

The plaintiff also tendered in evidence a certain letter, dated May 20, 1892, and addressed to him, purporting to have been signed by The Lowe Bros. Cracker Co., and to have been dictated

by "L. D. Lowe, Prest." This letter contained a statement as to the financial condition of the Cracker Company. The evidence was objected to on the grounds that there was no proof that Lowe wrote the letter, and the objection was sustained. Nowhere in the record is there any evidence that the defendant, Lowe, either wrote or dictated this letter, or had any knowledge concerning the same. It could not, therefore, be used as an admission against him concerning the solvency of the Cracker Company.

2. Complaint is also made that the court permitted counsel for the defendant to ask the plaintiff, while on the stand as a witness, certain questions and receive his replies thereto, the questions and answers being as follows: "Q. When you demanded of Mr. Lowe the delivery of the two notes he had gotten the day before, what did he say? A. He said that he couldn't deliver them, but that he would give two notes in the place of them. Q. Just like them? A. Something like that." The testimony thus elicited was objected to on the ground that as the evidence showed that Lowe had already converted the two notes inquired about, his offer to make amends by giving to the plaintiff other notes to take their place would not relieve him of the consequences of his wrongful act. It is somewhat doubtful, under the evidence, whether Lowe took and destroyed these two notes under the mistaken belief that the plaintiff had accepted another note he had signed in their stead, agreeably to an arrangement whereby he, as president of the Cracker Company, was to give the plaintiff a mortgage on its property, or whether Lowe fraudulently destroyed the notes, knowing at the time that the plaintiff did not intend to surrender them until the mortgage was executed. The evidence objected to tended to throw light upon the good faith of Lowe with regard to the transaction, and thus to illustrate the question whether or not he had been guilty of a conversion in destroying these notes.

3. After the plaintiff had closed his case and had announced his election to take a money verdict, the defendant made a motion for a nonsuit. Pending argument on this motion, the court adjourned till the following day. When argument was concluded on the next day, the court announced that the motion for a nonsuit would be sustained; but before any order was signed, the plaintiff asked to be allowed to return to the stand in order that

he might testify that in a conversation with Lowe about the Everett note for $500, which had been turned over to Drew Wade as the representative of the Cracker Company, witness had told Lowe he had this collateral note and had not sent witness the money for which it was to be discounted. The court declined to permit the case to be reopened for the purpose of introducing this testimony. It was apparently irrelevant, for the reason that as Lowe was the president of the Cracker Company, he presumably received the note as its representative, and could not be held personally liable for its failure to comply with the agreement to discount the note and turn over the proceeds to the plaintiff. No evidence was offered to show that Lowe converted this note or received any of the proceeds of it. The plaintiff also offered to testify that the value of the property set out in the mortgage which the defendant promised to give, as president of the Cracker Company, was $3,000, and was represented by Lowe to be worth that amount. The court ruled that this evidence was immaterial, and would have been so if offered before the plaintiff closed. Certainly, while the testimony tended to show that the Cracker Company owned property, it did not show the company was solvent or that its notes were really worth anything; so, at best, this testimony was of doubtful admissibility. While it "is almost a matter of course to let in new evidence on a point to save a nonsuit" (*McColgan* v. *McKay,* 25 *Ga.* 631), yet it is usually within the discretion of the trial judge whether or not he will allow a witness to be re-examined or will permit additional evidence to be introduced. *Cushman* v. *Coleman,* 92 *Ga.* 772 (4); *Freyermuth* v. *Railroad Co.,* 107 *Ga.* 31; *Davis* v. *Chaplin,* 110 *Ga.* 323. The rejected evidence, even if admissible, was not of such a character as to save the case from the judgment of nonsuit. This being so, it is unnecessary to determine whether this or other testimony would, if offered in time, have been material.

4. As to the Everett note for $500, which the Cracker Company had pledged to the plaintiff as collateral security, the plaintiff wholly failed to show any conversion by the defendant, or more than a breach of an agreement on its part to take the note from the plaintiff, discount it, and pay over the proceeds to him. As to the two notes given to the plaintiff by the Cracker Company and which did come into the possession of the defendant, it may be

conceded that the evidence was sufficient to authorize a jury to find that he wrongfully destroyed them, and was therefore chargeable with a conversion of the same. However, the plaintiff failed to show what, if any, value these notes had, his testimony tending to disclose that the maker of them, the Cracker Company, was hopelessly insolvent at the time of the alleged conversion. Without proof of the value of these notes, the plaintiff could have no money recovery at all. *Bell* v. *Ober Co.*, 96 *Ga.* 214; *Fisher* v. *Jones Co.*, 108 *Ga.* 490. The nonsuit was therefore properly granted. *Judgment affirmed. All the Justices concur.*