## CITIZENS BANK OF MADISON *v.* SHAW.

1. There was no such variance between the allegata and probata as to require the grant of a new trial.
2. If a creditor receives promissory notes under an agreement to collect them and apply the proceeds to the payment of the debt, he is bound to use ordinary care and' diligence in making such collection, and if any loss should happen to the pledgor by reason of a want of such care and diligence, the law will compel the pledgee to make good the loss so resulting.
3. If promissory notes are deposited with a creditor under an agreement of the character indicated in the preceding headnote, and they are converted by the creditor, this does not conclusively entitle the debtor to a credit of the face value of the collateral, but to an amount which represents the actual damage which he has sustained by such conversion.
   (*a*) If promissory notes are converted, and damages are claimed on account thereof, the amount of principal and interest at the time of conversion appearing from the notes themselves to be owing and unpaid,

and the interest upon that aggregate from thence to the trial, is prima facie the measure of damages, if the person setting them up is entitled to full recovery of the value of the notes. The converter has the right to show, in reduction, the fact of payment in whole or in part, the inability of the makers to pay wholly or partially, a release of the makers from their undertaking, the invalidity of the notes, or other matter which will legitimately affect and diminish their value.

4. While the evidence was conflicting, there was sufficient to sustain the contentions of the defendant, and there was no error in overruling the motion for a new trial.

Argued January 19,—Decided June 22, 1909.

Complaint. Before Judge Felton. Bibb superior court. February 4, 1908.

*Lane & Park,* for plaintiff.

*Olin J. Wimberly, W. J. Grace,* and *R. C. Jordan,* for defendant.

ATKINSON, J. 1. Suit was brought for $600, with interest and attorney's fees, against one of two makers of a promissory note. The defendant pleaded, that he signed the note jointly with the other maker, as an accommodation maker; that the other was the principal debtor and received the money for which the note was given; that in legal effect the defendant was security for the other; that he signed the note as joint maker and became surety on it in consideration of the fact that, for the purpose of securing and protecting it, the other maker deposited with the bank, which loaned the money and was the payee of the note, certain other promissory notes as collateral security, amounting to more than the note on which the suit was predicated, the notes so deposited being indorsed by the principal debtor; that they were good and solvent, and it was agreed between the defendant and the bank that such notes were to be collected by it and applied to the payment of the note signed by the defendant, and those not falling due until after the debt should mature were to be held as security against any renewal, and for the protection of the defendant; that in consideration of this, he agreed to sign as a joint maker of the note sued on, and did so, and he would not have signed had not the other maker so placed the collaterals in the hands of the bank; that the bank did not use due diligence to collect the collateral notes, but collected $314.13, delivered to the other maker, without the knowledge or consent of this defendant, a portion of such collateral notes, aggregating $322.36, and has wholly failed to account for or make returns in regard to other notes aggregating $147.35; that

loss and damage has accrued to this defendant by reason of the conduct of the plaintiff, and his risk as surety has been increased. On the trial he testified, that the other maker of the note desired to discount certain notes, and defendant endeavored to do so for him, but could not; that he inquired of the bank if it would lend the other maker the money, but was told that it would not do so, but would lend it to him; that the officer of the bank discussed the value of the notes, and said that he could safely sign a note for $600; that the other maker of the note agreed to this; that "we went to the bank, and I signed the note, and took his collateral which I turned over to the bank; the bank wanted no collateral from me, but I wanted collateral from Gray [the other maker], and I took the sundry notes amounting to $785 and gave them to the bank for collection to be applied to this note. I was present when Mr. Gray signed the note. I took the collateral notes from Gray as security for my signature, and turned them over to the bank to be applied to the discount of this note. They took them with that understanding. I did not get any of the money on that note. My understanding was that it was credited to Mr. Gray's account. The bank did not accept these notes from Gray as collateral. I accepted them from him, and I turned them over to the bank." No objection appears to have been made to this evidence, and, so far as the record shows, no claim of variance was raised during the trial, but the defendant took its chance of obtaining a verdict under the conflicting evidence, and, having lost, for the first time raised the question of variance by a motion for a new trial. As shown by the evidence of the plaintiff, the terms of the contract on which the notes were deposited with the bank for collection and application were not identical with those of the contract as alleged. But both the pleadings and evidence set up a deposit of the same notes with the bank for the purpose of collecting them and applying the proceeds to the debt, and a failure to do so. The term ".collateral," used both in the pleadings and evidence, may not have been a technical characterization descriptive of the status of the notes. The allegation in the plea that Gray, the other maker of the note, deposited the notes, which were spoken of as collaterals, with the bank, did not strictly accord with the evidence of the defendant to the effect that Gray delivered the notes to him, and he delivered them to the bank, but both the plea and

the evidence referred to the same arrangement, and both set up on behalf of the defendant an agreement of the officer of the bank with the defendant that the notes deposited should be collected, and the proceeds should be applied to the payment of the debt. Taken as a whole, we can not say that there was such a variance between the allegata and probata as to require the grant of a new trial. Authorities were cited by counsel for plaintiff in error in reference to variance as a ground for new trial, but none of them were based on facts similar to those here involved.

2. If the notes were deposited with the bank under the agreement to which the defendant testified, and collections were made on some of them, it was the duty of the bank to have applied the amount so collected to the note of the defendant and his comaker. If they failed to do so and allowed the comaker to withdraw it on his check, when suit was brought on the note the defendant would be entitled to a reduction pro tanto. The charge of the court on this subject, to which exception was taken, was not amenable to the criticisms made upon it, that it was without support in the pleadings and was calculated to mislead the jury.

3. If the notes were deposited under the contract as contended by the defendant, and the plaintiff converted some of them by delivery to his codebtor, without the consent of the defendant, and by failing in its duty in regard to collecting the others and applying the proceeds thereof in accordance with the agreement, the defendant was entitled to a credit for the amount of damage which he sustained by reason of the wrongful conduct of the plaintiff. In such a case the debtor would not be entitled absolutely to a credit of the face value of the notes converted, but only an amount which would represent the actual damage which he sustained. If a note is converted, its face value does not conclusively determine its actual value, but it is prima facie evidence thereof; and upon proof of a conversion of a promissory note of a given face value, this will be deemed its prima facie value as against the wrongdoer, and the burden of rebutting this valuation and showing it to be of less value will rest upon him. Potter *v.* Merchants Bank, 28 N. Y. 641 (86 Am. D. 273) ; 2 Parsons on Contracts (9th ed.), m. p. 196; Decker *v.* Matthews, 12 N. Y. 319; Sedgwick on Damages (8th ed.), §256; Thayer *v.* Manley, 73 N. Y. 308. Where the contention has been that holder of promissory notes as collat-

eral security had failed to use proper diligence to collect them, it has been held to be necessary to show both that failure to collect was due to the negligence of the holder of the collateral, and that damage accrued to the other party therefrom. *Mauck* v. *Atlanta Trust & Banking Co.,* 113 *Ga.* 242 (38 S. E. 845). This class of cases is distinguishable from cases of conversion. In the one damage is claimed as a result of negligence. This involves two elements, negligence and consequent damage. Proof of negligence in collecting a note or chose in action does not alone show that any damage has resulted therefrom. A promissory note may be just as collectible after the negligence as before. No loss may have occurred to the person depositing the collateral. Nothing more than delay may have occurred. In cases which involve an effort to recover damages resulting from negligence it is necessary to show not only a cause but an effect resulting therefrom. Where, however, there is a conversion of property, relatively to the owner or person entitled to its possession or proper disposition, the property is lost. The injury has been done by the conversion. It is not a matter of negligence from which damage may or may not arise, but the injury results directly from the conversion. The question then becomes, what evidence is necessary as to the extent of the damage which has thus been done? If property not carrying evidence of its value on its face were converted, proof of its value would be necessary to make out a prima facie case; but where a note itself contains a promise to pay a specified amount of money, that in itself is some evidence of its value. If it be converted, the law will not presume insolvency of the maker of the note, but rather will prima facie presume solvency in favor of the owner or person entitled thereto, leaving the wrongdoer to rebut this prima facie presumption if he can, and thus reduce or disprove the damage which he has apparently done. Hence in such a case the amount of the note, with interest, furnishes a prima facie measure of damages for its conversion, but this may be rebutted by evidence. In Booth v. Powers, 56 N. Y. 22, the rule is thus stated by Fogler, J.: "In an action of this kind [to recover the value of a promissory note which had been converted], the amount appearing to be unpaid upon the note, of principal and interest at the time of the conversion, and the interest upon that aggregate from thence to the trial, is prima facie the measure of damages.

Mercer *v.* Jones, 3 Camp. 477; Evans *v.* Kymer, 1 B. & A. 528; Decker *v.* Matthews, 12 N. Y. 313; St. John *v.* O'Connel, 7 Porter (Ala.); 466.   The defendant has the right to show, in reduction, the fact of payment in whole or in part, the inability of the makers to pay wholly or partially, a release of the makers from their undertaking, the invalidity of the note, or other matter which will legitimately affect and diminish its value."   See also, on the general subject, Griggs *v.* Day, 136 N. Y. 152 (32 N. E. 612, 18 L. R. A. 120, 32 Am. St. R. 704) ; Note to Mercer *v.* Jones, 2 Ames' Cases on Bills & Notes 693; Union Trust Co. *v.* Rigdon, 93 Ill. 458 (7).

Where one accepts a promissory note as security or makes a contract in which he directly or impliedly concedes its value, if he converts it it should be treated as prima facie a thing of value as against him.   In the present case, aside from the matter of presumption arising from the face value of the notes, there was some evidence on the part of the defendant that he and the officer of the bank had discussed their value, and that the latter had expressed the opinion that, upon the basis of such notes as security, he could safely sign the note now sued on for $600.   In *Fisher* v. *George S. Jones Co.,* 108 *Ga.* 490 (34 S. E. 172), Fisher gave to the George S. Jones Company a promissory note which was secured by a mortgage on certain personal property.   He failed to pay the note at maturity, and the mortgage was foreclosed, and the execution issued thereon was levied.   He interposed an affidavit of illegality, in which he alleged, that, by agreement with the plaintiff, he sold to a firm the property which was levied on, taking their promissory notes therefor, made in favor of the George S. Jones Company, which were delivered to that company; that subsequently these notes, not having been paid though long past due, were surrendered by the George S. Jones Company, which accepted in lieu thereof from one of the firm his individual notes, thereby releasing the partnership from payment; and that this was done without the consent of Fisher.   Suit was also brought against Fisher on the note given by him, and he set up the same defense by plea, and, further, a release from liability by written agreement.   He also pleaded that the notes of the firm were delivered to the plaintiff and accepted by it as collateral security, and that, the plaintiff having released the partnership, this operated to release the defendant also.   The two cases were tried together.   It is stated in the

opinion of Fish, J., that the pleas alleged a conversion, but did not allege that loss was thereby sustained, and that the evidence showed a conversion, but did not show what, if any, damage was sustained by reason thereof. The actual ruling made on the subject is stated in the first headnote, as follows: "The conversion of a promissory note deposited by a debtor with his creditor as collateral security for the payment of the debt does not entitle the debtor to a credit of the face value of the collateral, but only to an amount which represents the actual damage which he has sustained by such conversion." It is evident that the contention there made was that the person converting a note was conclusively liable for the face value thereof; and the point was not discussed whether, if there had been an allegation of loss or damage, the face value of the note would have furnished prima facie evidence of the extent thereof. It will be seen also, from an examination of the facts stated in that case, that the defendant alleged in his pleadings that the notes of the firm were long past due when the substitution was made, and that the second notes taken were signed by one member of the same firm. He did not either allege or prove that the second notes were any less valuable than the first.

In *Brooke* v. *Lowe*, 122 *Ga.* 358 (50 S. E. 146), the decision may apparently conflict with what is here ruled, but an examination of the facts will show that it does not necessarily do so. In the 4th headnote it is stated: "When a plaintiff in a trover suit elects to take a money verdict, but wholly fails to show the value of the property alleged to have been converted by the defendant, no money recovery in favor of the plaintiff can be had, and the awarding of a nonsuit is proper." This rule is recognized above in relation to property which does not bear its value upon its face. Relatively to a promissory note calling for the payment of a certain amount of money, in the absence of any other evidence to the contrary, the language may be too broad. But, on turning to the opinion, it is stated by Mr. Justice Evans (pp. 361-2) as follows: "As to the two notes given to the plaintiff by the Cracker Company and which did come into the possession of the defendant, it may be conceded that the evidence was insufficient to authorize a jury to find that he wrongfully destroyed them, and was therefore chargeable with the conversion of the same. However, the plaintiff failed to show what, if any, value these notes had, his testimony

tending to disclose that the maker of them, the Cracker Company, was hopelessly insolvent at the time of the alleged conversion." This ruling, in the light of the facts, does not necessarily go further than to hold that where the plaintiff himself affirmatively showed the insolvency of the maker of the notes, and therefore their lack of value, he rebutted any presumption of value that might otherwise have arisen from their face, and negatived his right to recover on that basis.

4. While the evidence was conflicting, there was sufficient to sustain the defendant's contentions, and there was no error in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur.*