## ROYAL BANK OF CANADA v. UNIVERSAL EXPORT CORPORATION.

(Circuit Court of Appeals, Second Circuit. February 1, 1926.)

### No. 166.

1. **Banks and banking** $\Leftrightarrow$ **175(5)—Directed verdict against bank for more than nominal damages, for having accepted check rather than coin in payment of draft, held erroneous.**

In action against collecting bank for damages for having accepted check in payment of draft, in place of coin with which law of Cuba required such drafts to be paid, where there was no evidence that insistence would have resulted in payment in currency, it was error to direct verdict for plaintiff for more than nominal damages.

2. **Banks and banking** $\Leftrightarrow$ **175(5)—Directed verdict against bank for more than nominal damages for alleged unauthorized surrender of draft on receipt of check held erroneous.**

Where bank, to which accepted draft was delivered for collection, received in payment check of drawee firm, which was never paid, held, directed verdict against it for more than nominal damages for its unauthorized surrender of draft was erroneous; check being at least as valuable as draft.

3. **Banks and banking** $\Leftrightarrow$ **171(8)—Bank's act in accepting check in payment of draft held ratified by plaintiff's acts after learning facts.**

Where collecting bank accepted check, instead of money, in payment of draft, plaintiff, who, after learning facts, treated exchange as proper, sought possession of check, proposed to sue on it, and asked bank to sue on it, held to have ratified bank's act.

4. **Principal and agent** $\Leftrightarrow$ **170(3), 171(1).**

Principal, desiring to challenge agent's doings, must not postpone too long, or undertake any project based on their propriety.

5. **Appeal and error** $\Leftrightarrow$ **1177(7)—Entry of judgment by appellate court held unwarranted, though proof warranted directed verdict.**

Circuit Court of Appeals, reversing judgment on directed verdict for one party, and holding that proof warranted directed verdict for adverse party, held not authorized to direct judgment accordingly, in view of possible development of new evidence on second trial.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Universal Export Corporation against the Royal Bank of Canada. Judgment for plaintiff on a directed verdict,

and defendant brings error. Reversed, and new trial ordered.

The action was in contract, and alleged that in the summer of 1920 the plaintiff delivered to the defendant for collection a draft, payable in dollars, drawn by the plaintiff upon a Cuban firm, and accepted by it, maturing on September 8, 1920, and extended to "on or about" October 9th; that in consideration of its charges the defendant promised to use diligence in presenting the draft and demanding payment from the drawees, and in protesting the same in case of nonpayment; that under the law of Cuba such drafts must be paid in coin, and, if coin is not in existence, then in accordance with local usage; that on October 9th the defendant presented the draft for payment, but neglected to demand payment in coin, to wit, dollars, but instead received the drawee's check and surrendered the draft; that the check was not paid, nor the draft returned, nor was the draft ever protested; that the drawees had become insolvent and the plaintiff was unable to collect. The answer traversed all the allegations of the complaint, except the issuance of the draft and its acceptance, and contained two pleas not necessary to set forth for the disposition of the case.

Upon the trial it appeared that the plaintiff had drawn a draft against a Cuban firm for merchandise sold, which after many refusals the drawees had finally accepted. The plaintiff, through its agent or employee, delivered the draft to the defendant for collection, with instructions to remit to a New York bank. At its due date in August the drawees had reaccepted the draft, and got an extension for 30 days, and upon the second due date, in September, they had again reaccepted it and got a second extension, so that it finally fell due on October 8, 1920. On that day the defendant presented it for payment again, and the drawee refused, but told the defendant's agent to come back the next day, October 9th, which was a Saturday. On that day the defendant again presented the draft and surrendered it for a check in its own favor upon the drawee's account in a Cuban bank. This check the defendant took at once to the bank, but arrived after it had been closed at noon.

On the next day Cuba declared a moratorium, which lasted until February 15, 1921, after which the defendant made several efforts to collect the check from the bank, which was refused for lack of funds. On February 17th the defendant protested the check, of which it notified the plaintiff's New York bank on February 25th. The plaintiff learned of the protest on April 6th and asked its bank to tell the defendant to deliver the check to its Cuban lawyers, a request repeated direct to the defendant on April 8th. This the defendant did some time before April 26th, and on May 10th the plaintiff wrote to its bank to ask the defendant to sue on the check itself; no indorsement having been made. This the defendant refused to do, though it offered to indorse the check without recourse. On June 13th, over two months after the time it had learned of the defendant's original receipt of the check and surrender of the draft, the plaintiff charged the defendant with default in taking it. The check was never paid, and the makers became bankrupt.

George Gray Zabriskie, of New York City (Leonard P. Moore, of New York City, of counsel), for plaintiff in error.

Lester B. Nelson, of New York City, for defendant in error.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge (after stating the facts as above). The defendant's supposed faults are two—the failure to demand money of the drawees, and the surrender of the draft.

[1] As to the first, there is not a particle of proof that the drawees had any money at hand; on the contrary, it is extremely improbable that they did. People do not generally keep over $3,000 in their till, but expect to take up their paper by check. It did not appear that the drawees could have got the money anywhere but by check on their bank, and it does appear that it was too late to do that. The plaintiff had to prove that insistence on currency would have resulted in currency. The record contains nothing of the kind, and every reasonable surmise is to the contrary. It was plainly error to direct a verdict for more than nominal damages on the first fault.

[2] The second fault was in surrendering the draft. Had this been without getting any corresponding obligation, it may be that the defendant would stand charged prima facie with the face of the draft as in trover (Potter v. Mechanics' Bank, 28 N. Y. 641, 86 Am. Dec. 273; Griggs v. Day, 136 N. Y. 152, 32 N. E. 612, 18 L. R. A. 120, 32 Am. St. Rep. 704; McPeters v. Phillips, 46 Ala. 496; Hoyt v. Stuart, 90 Conn. 41, 96 A. 166; Citizens' Bank v. Shaw, 132 Ga. 771, 65 S. E. 81),

though even then it is hard to see how, in the face of the drawees' bankruptcy, it was proper to direct a verdict for the full amount. But the defendant got a check in exchange for the draft, and a check was as good to hold the drawees as their surrendered acceptance. So, if it was a breach to surrender the draft, we can see nothing but nominal damages following upon the second fault, as well as upon the first.

The complaint does not allege that the defendant was remiss in collecting the check, and strictly the evidence in the record is not relevant. However, the defendant was not remiss. Rodriguez, the defendant's collector, took the check to the drawees' bank as soon as he could and found it closed. Thereafter nothing could be done till February 15th, and two days later the defendant presented the check and protested it. It presented it several times later, always without success. There is no suggestion that the drawees' affairs got worse between February 17th and the time when the plaintiff learned of the check's dishonor, April 6th. Therefore, even if the complaint had alleged it, the proof would have failed to prove any damage through the neglect of the defendant. Indeed, even if it was a fault, strictissimi juris, to take the check at all, on October 9, 1920, it was the best available course in the plaintiff's interest, one which, so far as this record shows, put the plaintiff in a better posture than that in which it originally had been. The action is at best ungenerous, and the damages on any theory nominal.

[3] Besides, we think that the defendant made out its defense of ratification by documentary proof and ought to have secured a directed verdict in its favor. Confessedly it was acting as the plaintiff's agent when it took the check. Assuming that its act was unauthorized, none the less it acted on the plaintiff's behalf; it intended to act as an agent. When the plaintiff learned what it had done, it might by hypothesis have repudiated the transaction in toto and charged the defendant with its dereliction, as it later did. But this it did not do. On the contrary, from April 6, 1921, to June 13, it treated the exchange as proper. Not only did it fail to complain, but it asked for delivery of the check, got it, proposed to sue upon it, later suggested that the defendant should do the same, and offered to guarantee its expenses. It was only after more than two months had passed, and upon the suggestion of its lawyer, that it first raised any question as to the propriety of the defendant's conduct.

[4] That was too late. If a principal would challenge his agent's doings, he may not postpone too long; above all, he must not undertake any projects based upon their propriety. While it is often said that as against an agent the proof must be clearer, the rule still obtains that forbids the principal to blow hot and cold. The books have precedents clearly akin to the case at bar. Bray v. Gunn, 53 Ga. 144; Argus v. Ware, 155 Iowa, 583, 136 N. W. 774; Halloway v. Arkansas, etc., Co., 77 Kan. 76, 93 P. 577; Pickett v. Pearsons, 17 Vt. 470; Courcier v. Ritter, 6 Fed. Cas. 644, No. 3,282. In the case at bar ratification was complete.

[5] We decline to direct judgment for the defendant. Slocum v. N. Y. Ins. Co., 228 U. S. 364, 33 S. Ct. 523, 57 L. Ed. 879, Ann. Cas. 1914D, 1029, stands, as we understand it, to the contrary. The Supreme Court must modify the rule; not we. Our decision in Royal Italian Government v. National Brass & Copper Tube Co. (C. C. A.) 294 F. 23, appears to be to the contrary, but the point was not discussed, and probably not argued. An error in the first trial of a cause as little removes its eventual disposition from a jury, when the court directs the verdict, as when a jury has found it. It is never impossible, at least not in this case, that new evidence may develop on the second trial, which will change the result.

Judgment reversed, and new trial ordered.