## 27266. AYCOCK MORTGAGE & BOND CORPORATION *v.* TALLEY.

DECIDED MARCH 17, 1939.

722

*Alvin L. Richards,* for plaintiff.

*Scott Candler, Cobb & Cobb, Robert Lee Avary Jr.,* for defendant.

STEPHENS, P. J. (After stating the foregoing facts.) The execution of the notes sued on is not denied, and they have never been paid. The plaintiff therefore is entitled to a verdict and judgment in the amount of the principal as represented by these notes and interest thereon, less any credits which should have been made on the debt represented by the notes by an application of the $150 realized on the sale of the Fair Street property which had been conveyed by the defendant as security for the notes unless the Aycock Corporation has made collections on the other notes which this corporation held as collateral for the notes sued on, or unless the Aycock Corporation converted these collateral notes to its own use by selling or transferring them to some one else. If any money has been collected by the plaintiff on these collateral notes, or if they have been sold by the plaintiff or otherwise converted by the plaintiff, the plaintiff should account to the defendant.

There is no evidence whatsoever that any payments have ever

been made to the Aycock Corporation or to any one else on these collateral notes. Did the plaintiff convert these collateral notes by selling them or transferring them to some one else? If the plaintiff converted them or transferred them to any one else they must have been transferred to Gober. While it appears from the recital in the deed which Gober made as attorney in fact, conveying the church property, which had been deeded as security for all the notes, to the Aycock Corporation, that Gober foreclosed on the church property for the purpose of collecting the indebtedness due on all the notes, including not only the notes which he had acquired from the duBignon Company, but also on the collateral notes which the Aycock Corporation had acquired from Mrs. Kantor, there is no evidence whatsoever, other than as contained in the recitals in this deed from Gober as attorney in fact to the Aycock Corporation, that the collateral notes which the Aycock Corporation had acquired from Mrs. Kantor, had ever been parted with by the Aycock Corporation or transferred or sold to Gober or to any one else.

While perhaps it was to the interest of the Aycock Corporation to transfer the collateral notes to Gober, so that Gober could foreclose on all the notes, including those held by him as well as the collateral notes, if the property had brought more at the sale and foreclosure by Gober than the amount of Gober's claim, which, under the contract between Mrs. Talley and the duBignon Company were transferred to Gober, constituted a first mortgage on the church property for the payment of the duBignon notes held by Gober, the Aycock Corporation by that transaction would be able to realize something on the collateral notes held by it.

While perhaps the fact that Gober, as appears only from the recitals in the deed which he executed as attorney in fact after selling the church property under the power of sale contained in the deed, sold the property for the purpose of satisfying the entire indebtedness against it, including that represented in the collateral notes which had been conveyed to the Aycock Corporation, is a circumstance which, when taken in connection with any other evidence of a transfer of the collateral notes or of their conversion by the Aycock Corporation would authorize an inference that the Aycock Corporation had sold or transferred these notes, this fact standing alone is not sufficient to authorize the inference that the

Aycock Corporation had converted these collateral notes by any transfer to Gober. This fact, under the law and the evidence in the case, is equally consistent with the theory that the Aycock Corporation, without selling or transferring these notes for value to Gober, was merely allowing Gober to put these notes in with the duBignon notes and foreclose on the property for the payment of the entire indebtedness, in the hope by the Aycock Corporation that the church property under the foreclosure sale would bring enough to satisfy the duBignon notes as well as some of the indebtedness represented by the collateral notes, as with the theory that the Aycock Corporation sold these collateral notes for value to Gober. Furthermore, if there is any evidence whatsoever from which it could be inferred that the Aycock Corporation converted the collateral notes by sale to Gober or any one there is no evidence whatsoever as to the value of these notes at the time of such conversion. Code, § 12-609; *Fischer* v. *George S. Jones Co.,* 108 *Ga.* 490 (34 S. E. 172); *Citizens Bank of Madison* v. *Shaw,* 132 *Ga.* 771 (65 S. E. 81).

It is suggested by counsel for the defendant in error that the evidence authorized the inference that the Aycock Corporation furnished the money with which Gober bought the first series of notes from the duBignon Company, and that therefore Gober, in taking a transfer of these notes and in foreclosing on them and also on the collateral notes which the Aycock Corporation owned, was acting as agent for the Aycock Corporation. If this be true, it was no conversion of the collateral notes. It makes no difference whether Gober in his own right acquired the duBignon notes, or whether the Aycock Corporation itself acquired the duBignon notes, the contract under which Mrs. Talley transferred the notes to the duBignon Company gave to the duBignon Company and its assigns a first mortgage on the Baptist Church property to secure these notes. If the Aycock Corporation itself had bought these notes from the duBignon Company, the Aycock Corporation as transferee of the duBignon Company would have held a first mortgage on the Baptist Church property for the payment of these notes which would have taken precedence of the second mortgage against this property which the Aycock Corporation held as security for the collateral notes. In either event the proceeds of the sale, which were $250, and less than the amount due on the duBignon notes, would have been first applied on the du-

Bignou notes. There is therefore no evidence whatsoever from which it can be inferred that any payments have ever been made, or should be credited, on the collateral notes, which the Aycock Corporation had acquired.

There being no evidence whatsoever from which it could be inferred that any payments had been made on these collateral notes, or that these notes were ever sold or transferred by the Aycock Corporation to any one for value, and were thereby converted by the Aycock Corporation, and there being absolutely no evidence as to the value of these notes at any time after the Aycock Corporation acquired them, and therefore there being no evidence as to their value at the time of any conversion of these notes by the Aycock Corporation, if it could be inferable that they were converted, and there being evidence that at the time of the trial these notes were valueless and worthless, there is absolutely no evidence from which it can be inferred that the defendant was entitled to any credit on the notes sued on, either from payments made on the collateral notes after the Aycock Corporation had acquired them, or on account of any conversion of these notes by the Aycock Corporation, the evidence demanded a verdict for the plaintiff. The verdict found for the defendant was not as a matter of law authorized by the evidence, and the court erred in not granting a new trial to the plaintiff.

*Judgment reversed. Sutton and Felton, JJ., concur.*