### GOULD v. TRASK et al.

*(Supreme Court, General Term, Third Department. July 7, 1890.)*

1. **FACTORS AND BROKERS—DEPOSIT OF MARGINS—EXTENSION OF TIME.**

   Defendants, as brokers, purchased certain stocks for plaintiff under a contract by the terms of which he was to deposit a certain per cent. of their par value as margins, and in case a decline in stocks should reduce the margins below an agreed minimum per cent. defendants might demand deposits sufficient to increase the margins to the original amount required to be deposited, in default of the payment of which they were authorized to sell without notice. Plaintiff, having been repeatedly called upon for margins, gave defendants his note, which was placed to his credit and receipted for as "temporary collateral," but there was no settlement of the accounts between the parties at the time. Afterwards, on plaintiff's failure to comply with repeated demands for margins, defendants sold the stock, rendered an account of this and other sales, returned his note, and on his approval of the account, and at his request, paid him the balance due. *Held* that, in the absence of an express agreement, the note did not amount to a deposit, nor operate to extend the time for depositing margins until the note should mature.

2. **SAME—ESTOPPEL.**

   Where plaintiff, at the time, makes no objection to the sale, and subsequently receives back his note, and asks for, receives, examines, and approves the statement of his account, and accepts a check in full settlement of the balance appearing due him, and afterwards acquiesces therein until the stock shall have greatly increased in value, he will be estopped to repudiate the acts of defendants, and hold them for ᵗhe advance.

**8. Same—Interest.**
The action being for conversion of stocks, and not for a balance due on account, plaintiff cannot place in issue the question whether the accounts were incorrect by reason of excessive charges of interest, where it does not appear that such excessive charges would equal the deficit in margins.

Appeal from judgment on report of referee.

Action by William Gould, Jr., against Spencer Trask and others for the conversion of certain stocks held by defendants as brokers. Judgment for defendants on the report of a referee. Plaintiff appeals.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*D. Cady Herrick*, for appellant. *George L. Nichols*, for respondent.

LEARNED, P. J. This is an appeal from a judgment in favor of defendants entered on the report of a referee. The action is to recover damages alleged to have been sustained by plaintiff on account of the alleged conversion by the defendants of certain shares of stock. The plaintiff commenced buying stocks on a margin through the firm of Trask & Traver, about May, 1880. The present defendants succeeded that firm in May, 1881, and the plaintiff's business of buying stocks, as aforesaid, was transferred to and continued by the present defendants. It is found by the referee that the agreement made between plaintiff and these firms was that he should deposit as margin 10 per cent. on the par value of stocks; that, if there should be a decline so that the margin should be reduced to 7 per cent., plaintiff should deposit enough to make the margin 10 per cent.; that if he failed to do so they were at liberty to enter stop orders or to sell his stocks without notice. On the 27th of September, 1887, defendants were carrying for plaintiff's account 200 shares Missouri Pacific, 200 shares St. Paul, 200 shares Western Union, bought by them, as brokers for him, with their own capital and credit. They were also carrying in his account 50 shares American Express and 50 shares of National Exchange Bank, Albany, which had been delivered by him as margin. These last-mentioned stocks were sold October 26, 1887, by plaintiff's express direction, and no question arises as to them. On or about September 27, 1887, the margin on plaintiff's account was less than 2 per cent. on the par value of stocks carried by defendants. From that date till October 24th the highest margin was less than 3 per cent. Between those dates the defendants made repeated demands on plaintiff to deposit additional margin, which demands were not complied with, unless as follows: On the 15th day of October plaintiff executed and delivered to defendants his promissory note, at 30 days, to his own order, and indorsed by him, for $5,000, and they gave him a receipt therefor, describing it as "to be held as collateral, temporarily." At the time of the delivery of said note defendants told plaintiff that they would not close his account that day, but that the stocks must be sold unless he could assure them within a short period that he would have the money. The plaintiff informed them that he would have it by the 17th or 18th of October, to which they replied that they would wait till that time before taking action. On the 18th day of October defendants sold 100 shares of plaintiff's St. Paul stock by his direction. On the 20th defendants notified plaintiff that they would enter a stop order the next day on the remaining stocks, specifying them, at certain specified prices. At his request, on the 22d, they changed the limit on two of these parcels of stock. On the 24th the limits on the stop orders were reached, and the stocks were sold at the stock exchange in New York. A stop order, as found by the referee, signifies that where an order has been given to sell stocks at such a price, and like stocks sell at that or a lower price, the broker who has the order must sell the stocks at the next market price following the sale of like stocks. The proceeds of these sales were applied to plaintiff's debt to defendants, and the balance, $68.76, was paid to him October 29th, and retained by him. The referee finds that the plaintiff received a detailed statement of account from defendants, examined and ap-

proved it, and accepted the above sum in full of the balance. Afterwards, on November 17th, the plaintiff notified defendants that he was informed that they had no right to sell his stocks while they held his note as collateral until the note was due and dismissed. He therefore ordered the stocks to be sold at market rates. They had returned to him that note on the 27th of October.

The point at issue between the parties is whether the receipt by defendants of plaintiff's note aforesaid took from them the right to sell the plaintiff's stocks for want of a sufficient margin. At the time the note was delivered, according to the testimony, the margin which plaintiff had was less than one-half of 1 per cent. Even if the note then were to be considered as additional margin, the total amount of the margin would not be 10 per cent. on the stocks carried, calling them only $60,000 at par; and the finding is that, if the margin should be reduced to 7 per cent., plaintiff would, by his agreement, pay enough to make it 10 per cent. In the most favorable view for the plaintiff, therefore, he did not at that time make his margin good. On the days of the actual sales, October 18th and 24th, also, plaintiff's margin was less than 1 per cent.; so that at least on the former of those days the plaintiff, even with the note, had not 10 per cent. margin with defendants. The plaintiff urges that the receipt of the note was an extension of the indebtedness then owing to defendants, and a suspension of the right of action; but the receipt given by them shows that this view is not correct. The note was not given for an amount actually due and owing. There was an unsettled account between the parties. The fluctuations in stocks might change the balance of that account when brought to a settlement. Nothing had been agreed upon which this note was intended to extend. Further, the receipt states that the note is to be held as collateral, temporarily. The plaintiff cites *Pomeroy* v. *Tanner*, 70 N. Y. 550. But it was there found as a fact that there was a valid agreement to extend the time. Here no such agreement is proved, and the note and receipt do not establish such an agreement.

But, again, the testimony shows that the note was not accepted as a margin. It gave the defendants no security. The plaintiff was no more liable on the note (in defendants' hands) than he would have been on the balance of account. It formed no lien on any property. It never passed out of defendants' hands until it was returned to plaintiff. Therefore no recovery could ever have been had against him on the note except for such amount as he might be found to owe on the settlement of his speculations. The construction which plaintiff gives to the transaction imposes on defendants an obligation, for no value received, to hold plaintiff's stocks, without selling them, for 33 days from October 15th. It would seem almost incredible that defendants would enter into such an agreement when they were constantly calling in vain on plaintiff to make his margin good; and the testimony of the witnesses on this point shows that no such agreement was made or contemplated. The plaintiff himself accepted his returned note 12 days after it had been given, and received, without objection, a few days afterwards, the balance of his account owing him on the sales of stocks. It was not until some two weeks after this receipt and acceptance that he complained that the action of defendants was not proper. The defendants had made these purchases of stock with their own capital and credit for plaintiff. He was bound to indemnify them against loss, according to the terms of their agreement; and according thereto they were entitled to be kept safe, to a certain extent, by means of the margins against the risk of loss. Under these circumstances they notified him October 20th of their intention to enter stop orders. The next day plaintiff requested a change in these orders, which was made. He made no other objection to the sales which might be made under these stop orders. He did not insist that his note was an extension of time, or was a sufficient margin. Therefore he knew that his brokers were about to make sales, in certain events, which he now asserts they had no right to make. But he made no objection.

The sales were made. He received a statement of the account, asked for and received his note, which, he now says, was an extension of time to November 17th. On the 29th of October he asked for and received a check for the balance, and then had an interview with defendants, where he examined the account and found it correct. No complaint was made during all this time that the sales were not justifiable. It may be that, if he had then objected to the sales, and the defendants had thought that the objection was just, they could have bought the like amount of stocks without any loss. But the plaintiff waited without complaint until the stocks had risen, and then informed the defendants that their acts were unauthorized. Good faith demanded of plaintiff an immediate repudiation of the defendants' acts as soon as he knew of them and a refusal to accept any of the avails.

The plaintiff further urges that the accounts of the defendants were incorrect, inasmuch as they charged plaintiff interest on interest. That question cannot be raised here. The complaint is not for a balance due on account. It is for conversion of stocks. There cannot be a recovery as on an accounting. If the charge of interest on interest is incorrect, the amount overcharged is not enough to show that the margin of plaintiff was good. Therefore it is immaterial. If the defendants owe plaintiff a balance on their account, he must bring another kind of action to recover it. The judgment is affirmed, with costs. All concur.