FRANK M. GILLETT et al., Respondents, v. WILLIAM I. WHITING, Appellant.

Where a broker who had purchased stock for a customer on a margin, sold it without previous notice to the customer, and thereafter presented an account to the latter showing the sale and a resultant loss, and the latter, without objection as to the manner of sale, promised to pay the balance shown by the account to be due, *held*, that he thereby waived the right to notice, and recognized and ratified the sale made.

In an action by a stock broker to recover a balance alleged to be due from a customer, where an unauthorized sale was claimed, plaintiff proved the service of an account showing the sale as made and a promise of defendant to pay the balance shown to be due, although declaring that he knew plaintiff had violated his contract by making the sale. The court was requested, but refused, to charge that, "to make defendant liable for a ratification of an unlawful sale, it must appear to the satisfaction of the jury that he knew his legal rights." *Held*, no error.

Defendant, on cross-examination of plaintiff, for the purpose of discrediting the alleged purchases, sought to follow through plaintiff's books, not only the transactions in question, but his dealings with other customers. The court allowed this, except as to the names of the other customers. *Held*, that the limitation was within the discretion of the court; that the discretion was reasonably exercised; and so, there was no error.

It was shown what books were kept by plaintiff. Defendant offered to prove by experts what books were usually kept by stock brokers; this was excluded. *Held*, no error.

(Argued December 22, 1893; decided January 16, 1894.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made the first Monday of December, 1892, which affirmed a judgment in favor of plaintiffs entered upon a verdict and also affirmed an order denying a motion for a new trial.

This action was brought by plaintiffs, who were stock brokers, to recover a loss incurred by them on a sale of 100 shares of Chicago and Northwest common, and 100 shares of Ohio Southern stock, which they claimed to have purchased and carried for defendant on a margin.

The complaint alleged, and it appeared, that on September 30, 1884, defendant deposited with plaintiffs as a margin $200, and requested them to purchase for him 100 shares of Ohio Southern railroad stock; that on October 3, 1884, they purchased said stock at the market price, which, with their commissions, amounted to $1,100; that on October 7, 1884, defendant deposited $200 more with plaintiffs and requested them to purchase for him 100 shares of the Chicago and Northwest railroad stock; that on October 8, 1884, plaintiffs purchased the same at the market price, which, with their commissions, amounted to $9,350; that defendant gave no orders to plaintiffs as to how long he wished them to carry said stocks; that the Chicago and Northwest stock having fallen in price so that the $200 and $500 besides were lost, plaintiffs, on October nineteenth, sold it for $8,575. On or about December first plaintiffs rendered to defendant an account with interest adjusted as of November thirtieth, showing the sale and a balance then due of $1,505.08, with 100 shares of Ohio Southern stock on hand, worth about $950, and requested defendant to make good the deficiency by remitting to them $500 or $600 in cash; that defendant having failed to do so, on January 17, 1885, they sent him notice in writing that if he did not pay them $500 on account of said deficiency before January twenty-eighth they would close out the account by the sale of said stock.

Defendant having failed to comply with their demand, plaintiffs sold the Ohio Southern stock, and a judgment was demanded for the balance due plaintiffs on the account.

The further material facts are stated in the opinion.

*Joseph A. Shoudy* for appellant. The plaintiffs having acted in disregard of the obligations of their contract with the defendant, could not recover under the allegations of their complaint. (*Gillett* v. *Whiting*, 120 N. Y. 404.) There was no proof of ratification and no sufficient evidence to go to the jury upon that question. (*Gillett* v. *Whiting*, 120 N. Y. 406; *Stillwell* v. *M. L. Ins. Co.*, 72 id. 302; *Whitney* v. *Martew*,

88 id. 540.) The court erred in restricting the defendant's right of cross-examination of the witness Gillett.

*Ira D. Warren* for respondent. The court instructed the jury that such sale was unauthorized and constituted a conversion of this stock, and then instructed the jury that if after the stock was sold and after defendant had a knowledge of the whole transaction he promised to pay this account, that plaintiffs were entitled to recover. This was correct. (*Gillett* v. *Whiting*, 120 N. Y. 406.) It was not necessary for defendant to know the legal effect of his promise to pay this loss. (*C. Bank* v. *Warren*, 15 N. Y. 577; *Hyatt* v. *Clark*, 118 id. 567; *Hazard* v. *Spears*, 2 Abb. Ct. App. Dec. 353; Story on Agency, §§ 239–243; *De Freest* v. *Warner*, 98 N. Y. 217; *Way* v. *Sperry*, 6 Cush. 238.)

FINCH, J. On a former appeal in this case it was held that the broker's sales of the stock bought for the defendant were unauthorized for lack of notice of the time and place of sale, which amounted to a conversion, and that such unwarranted sales destroyed the foundation of plaintiff's claim, and left him without remedy for the advances made. (120 N. Y. 402.) It is now insisted that the Second Division of this court in so ruling disregarded earlier decisions to the contrary, disturbed a settled doctrine, and left it impossible to reconcile the cases. (*Gruman* v. *Smith*, 81 N. Y. 25; *Capron* v. *Thompson*, 86 id. 419; *Minor* v. *Beveridge*, 67 Hun, 1.) We shall certainly try to clear the doctrine of its difficulties, and end the supposed collision of authorities when the fit occasion comes; but to make the effort now would compel us to go entirely outside of the very different question involved in this appeal. For the Second Division further held, referring to some evidence appearing in the record, that if it should be proved that after the unauthorized sales had been made, and after due notice of them had been given to the defendant, and after an account had been presented embodying the result, the customer promised to pay the resultant loss as a balance due, it would be con-

clusive upon him, and justify a judgment for the plaintiff; and the case has been tried and decided on that theory. The court charged the jury that there could be no recovery unless they became satisfied that such promise had been made with full knowledge of the facts, and submitted that question, arising upon evidence quite contradictory, as the substantial issue to be determined. What remains for us to consider is simply whether there was any evidence to sustain the verdict, which was for the plaintiff, and whether any material errors occurred in reaching that result.

The promise of the defendant, if made, can operate as a waiver of the right to notice, or as a ratification of the method of sale adopted, and so does not require that the proof should reach to the extent of an account stated, a denial of which, as a proven fact, furnishes the basis for the appellant's principal argument. Without an actual agreement upon a precise balance, and a promise to pay that as such, the evidence may still show a promise on the part of the defendant which necessarily recognizes and ratifies the sales made, and the method which the broker pursued.

The principal loss occurred from the sale of the Northwestern stock. The capital advanced for its purchase by the broker was over eight thousand dollars, and the loss on the sale about ten per cent, with only a margin of two hundred dollars to apply on the deficiency : while the Ohio Southern cost only about eleven hundred dollars, which its own margin of two hundred dollars fully and sufficiently protected. The Northwestern stock was sold on or about October 18th, 1884, and it is agreed on all sides that on the 2d day of the ensuing December the brokers made up an account to that date which showed the sale made, the prices given and received, the amount of the loss, and claimed a balance due from defendant of over $1,500, to be further reduced by the outcome of the Ohio Southern stock still remaining on hand. With the account went a letter calling for five or six hundred dollars to apply upon the deficiency, and as an approximate sum to cover the loss which could not be precisely ascertained until a

sale of the Ohio Southern. This account and letter the defendant received, and with a full knowledge of the sale made and the price realized, the evidence tends to show that he promised to pay the sum demanded. Making no objection to the sale, raising no question of want of notice to him, in no manner criticizing the broker's action, the defendant accepted the result, and ratified the action which produced it, by promising to pay the deficiency. As it respects the North-western stock there is abundant evidence to sustain the conclusion of the jury that the defendant waived the objection of want of notice, and ratified the sale made.

The case is equally strong as to the later sale of the Ohio Southern. That was sold in January of 1885. The defendant admits in effect that he received a notice prior thereto that unless he made good the deficiency already existing by the 28th of January, the stock would be closed out. He thus had substantial notice of the time of sale and opportunity to protect himself if he pleased, and in view of his previous waiver and assent to the mode of sale adopted, a more precise or particular notice was hardly requisite. And in addition, there is again proof that after all the sales were made and when he knew they were made he promised to pay the resultant loss. He denies that, but his cross-examination weakened his credibility and the conflict of testimony was settled by the verdict of the jury.

There were some exceptions taken on the trial, but rather technical than substantial. On the cross-examination of plaintiff, the counsel for the defendant sought to follow through the books of account produced, not only the transaction in question, but other dealings with other people, for the avowed purpose of discrediting the alleged purchase of the brokers. That had been positively sworn to and the checks used had been produced and identified. Nevertheless, the court allowed free range of inquiry except as to the names of the other customers, and that restriction is the subject of an exception. I think it was fairly within the discretion of the court and that such discretion was reasonably exercised.

The offer to prove by an expert what books are usually kept by stockbrokers was clearly inadmissible. What books the plaintiffs did keep was shown, and what had become of them. If there was basis for claiming that any were withheld, the counsel had his remedy and could submit his inferences to the jury.

Passing by some trivial objections based on the form of answers made, we come to the exception to the court's refusal to charge that, " to make the defendant liable for a ratification of an unlawful sale, it must appear to the satisfaction of the jury that he knew his legal rights." What rights were referred to, or how the plaintiff was to prove the extent of defendant's legal knowledge, we are not told, nor why the latter, instead of asserting ignorance, explicitly declared that he knew plaintiff had violated his contract by selling his, defendant's, property. No ground existed for such a charge, even if in any conceivable case it could be justified. It cannot be necessary to argue seriously that there was no error in the court's refusal.

The judgment should be affirmed, with costs.

All concur, except BARTLETT. J., not sitting.

Judgment affirmed.