## LEVITEN v. BICKLEY, MANDEVILLE & WIMPLE, Inc.

Circuit Court of Appeals, Second Circuit. November 18, 1929.

No. 29.

826

Carter, Ledyard & Milburn, of New York City (Sidney W. Davidson and Leslie D. Dawson, both of New York City, of counsel), for appellant.

Joseph & Demov, of New York City (Isaac N. Jacobson, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). ■■ The appellant contends that its closing out of Leviten's trades was in strict conformity with its contract with him, because of the rules of the exchange and the express terms of the confirmation slip delivered to him after each order was executed. It may be conceded that, in the absence of anything to show the contrary, the rules of the exchange upon which the customer's order is to be executed will form part of his contract with the broker. Bibb v. Allen, 149 U. S. 481, 13 S. Ct. 950, 37 L. Ed. 819; Gettys v. Newburger, 272 F. 209, 215 (C. C. A. 8); Forget v. Baxter, L. R. 1900 A. C. 467; Thomson v. Thomson, 315 Ill. 521, 146 N. E. 451. But such rules cannot be deemed to be incorporated into the contract, if the broker has expressly agreed to terms which are inconsistent with them.

■ In the instant case Leviten testified to a conversation with defendant's agent, McGrail, antedating any of his market transactions, in which McGrail promised to give him notice before closing out his trades for lack of the requisite margin. McGrail denied such conversation, but the conflicting testimony presented a jury question as to the terms upon which the parties dealt. The confirmation slip delivered to Leviten after each trade was not a part of the original contract, and in order to make it such the defendant was bound to prove that Leviten knew the terms of the confirmation slips and understood them to apply to his transactions. Leviten denied that he read them. His mere receipt of them was not conclusive evidence of a contract in accordance with the terms they stated. It might have been, had he read them, and had they clearly indicated that they overrode the prior oral agreement to give notice; but Leviten's silence did not necessarily mean this, and the defendant so interpreted it at its peril. Thompson v. Baily, 220 N. Y. 471, 116 N. E. 387. The jury decided the issue in favor of the plaintiff, and that decision is not open to question on appeal.

■ The appellant's second contention is that, assuming its covering purchase of September 28th to have been unauthorized, Leviten rati-

fied its action by his subsequent conduct. Ratification has been defined as the subsequent adoption and affirmance by one person of an act which another, without authority, has previously assumed to do for him while purporting to act as his agent. Mechem, Agency (2d Ed.) § 347. By such ratification the principal absolves the agent from responsibility for loss or injury growing out of the unauthorized transaction, and gives him the same rights to compensation, reimbursement, and indemnity as he would have had, if his act had been previously authorized. Mechem, op. cit. § 491.

■ Ratification may be proved, not only by an express assent, as in Gillett v. Whiting, 141 N. Y. 71, 35 N. E. 939, 38 Am. St. Rep. 762, but also by implication from the principal's acquiescence or failure to dissent within a reasonable time after being informed by the agent of what he has done, as in Law v. Cross, 66 U. S. (1 Black) 533, 539, 17 L. Ed. 185. This was an action by an agent to recover from his principal the costs and expenses of purchasing and shipping a cargo of coal which the principal had declined to accept upon its arrival. The principal defended upon the ground that the purchase was unauthorized, as in fact it was, but the agent had promptly informed the principal of what he had done, and the latter had made no reply to his letter. The trial judge instructed the jury that the principal, if informed that the agent had departed from his instructions, was bound within a reasonable time to advise the agent that he did not mean to ratify his acts; otherwise, he must be taken to have acquiesced in what was done and was precluded from disputing the agent's authority. Mr. Justice Grier, in writing the opinion of the court, affirming a judgment for the plaintiff, remarked: " * * * But, as the coal was purchased for the principal, it belonged to him if he chose to accept it. If the price had risen, and Cross had sold it, Law might justly have claimed the profit; and when informed by his agent of what he had done, if the principal did not choose to affirm the act, it was his duty to give immediate information of his repudiation. He cannot, by holding his peace, and apparent acquiescence, have the benefit of the contract if it should afterwards turn out to be profitable, and retain a right to repudiate if otherwise." This case was cited with approval in Clews v. Jamieson, 182 U. S. 461, 483, 21 S. Ct. 845, 45 L. Ed. 1183.

If our own case of Burden v. Robertson, 7 F.(2d) 266, can be deemed inconsistent with the doctrine that ratification may be inferred from the principal's silence for an unreasonable length of time, it must, of course, yield to the authority of Law v. Cross; but the facts in the Burden Case, where the plaintiff was a third party, who dealt with the agent without any inquiry as to the extent of his authority and had no communication with the principal, are so different that we need not now pause to discuss it. The principle of ratification has frequently been applied in litigation involving the unauthorized purchase or sale of stocks held on margin by brokers, though usually the principal's silence has been accompanied by some affirmative act which strengthens the inference of ratification. Hanks v. Drake, 49 Barb. (N. Y.) 186; Gould v. Trask, 57 Hun, 589, 10 N. Y. S. 619; Buck v. Houghtaling, 110 App. Div. 52, 96 N. Y. S. 1034; Manning v. Heidelbach, 153 App. Div. 790, 138 N. Y. S. 750; Jacobs v. Moore, 195 App. Div. 452, 186 N. Y. S. 881. But instances are not wanting where, as in Law v. Cross the inference arises solely from delay in repudiation. Prince v. Clark, 1 B. & C. 186; Norris v. Cook, Fed. Cas. No. 10,305; Courcier v. Ritter, Fed. Cas. No. 3,282, at page 647; Story, Agency, § 258. And see Royal Bank v. Univ. Export Corp. (C. C. A.) 10 F.(2d) 669, 671, where we said that, if a principal would challenge his agent's doings, he must not postpone too long.

■ The application of the principles of ratification to the instant case requires a somewhat detailed consideration of the testimony as to what happened after Leviten learned of the covering purchase made for his account on September 28th. He learned of it by telephone the following morning, and thereupon had an interview with McGrail which he recites as follows:

"Q. When you received that telephone call, what did you do? A. I went over to Mr. McGrail, and I asked him, 'What is the idea of having me closed out while I was away?' when he promised me that everything would be taken care of until I would come back. Then he said, 'I was away on my vacation.'

"Q. Go ahead. A. And he said, 'While I was away this thing was done, and I could not help anything. It was the fault of the other end.'

"Q. Yes? Anything else? A. Well, nothing else that I remember right now.

"Q. Do you recall any other conversation at that time? A. Yes; he said he would take it up with Mr. Bickley; that I should be reinstated."

Leviten says that subsequently, on Oc-

tober 6th, he was told that he would be reinstated, but the next day reinstatement was refused him. In the meantime he had engaged in an additional market transaction through the defendant. On October 1st he bought short two cars of December butter and deposited $700 as margin. This trade was closed out on his instructions on October 3d, resulting in a loss of $298.24, as indicated by the confirmation slip (Plaintiff's Exhibit 26). The closing out of his short sales on September 28th left a balance due him of $46.44, as shown by the confirmation slip of that date (Plaintiff's Exhibit 23). There is dispute as to when Leviten received this confirmation slip. McGrail says it was given to him September 29th or the day following, while Leviten says he did not receive it until about October 20th. But, in any event, he received payment of the balance of $46.44 at the same time that he was paid what was left from the $700 margin deposited on the October 1st trade, the two together making $448.20. This payment was charged to his account on October 7th, as appears by Defendant's Exhibit C. On that date Leviten knew that reinstatement of his account had been refused; when he received the balance to his credit on defendant's books, he knew that that balance had been arrived at by charging him with the loss incurred through the unauthorized closing out of his trades on September 28th; he knew, at least by October 20th, the precise items of that loss, as evidenced by Exhibit 23. He retained, and still retains, the check, and he made no protest after receiving Exhibit 23, and gave no intimation of any claim upon the defendant until he filed his complaint, on December 18th.

Counsel for Leviten argue that his conversation with McGrail on October 7th amounted to a repudiation. We do not think it can be so construed. It may be paraphrased as an assertion by Leviten that the covering purchase was unauthorized, an admission by McGrail that it was, and the suggestion that terms of reinstatement would be discussed. While that discussion remained open, the principal was not bound to decide whether to affirm or repudiate the purchase made on his behalf. But on October 7th reinstatement was refused, and the situation then stood merely as one in which the principal had said that the agent's purchase was unauthorized, but had expressed no intent as to whether or not he would ratify it. Merely saying that an act was unauthorized does not amount to a repudiation, or prevent a subsequent ratification. See Buck v. Houghtaling, 110 App.

Div. 52, 96 N. Y. S. 1034. Thereafter Leviten received payment of the balance of his account, $448.20, which included the $46.44 credit resulting from the transaction of September 28th. By making this payment the broker in effect reasserted that the covering purchase had been made on Leviten's behalf. He said nothing. The confirmation slip (Exhibit 23) which he says he received about October 20th, reiterated the agent's assertion, and gave Leviten (if he did not already have it) full information as to the items charged against his account by reason of the broker's covering purchase. Still Leviten said nothing. He remained silent until December 18th, when he started suit. Thus for more than nine weeks after October 7th he gave no intimation whether he would ratify or repudiate the unauthorized act of his agent.

■ The situation was one where delay by the principal in deciding on his course of conduct, if permitted by the law, would give him the benefit of a change in the market if it moved in his favor, and put the loss on the agent if it went against him. In fact, the market changed very little for several weeks. The covering purchase had been made at 48¾ cents per pound. On October 7th the price was 47¾ cents; on October 14th and 15th it was 48½ cents. Had the defendant known at this time that the purchase was repudiated, it could have covered the transaction with a loss to itself of only one-quarter of a cent a pound. Thereafter the market trend was gradually downward until, on December 18th, the price had fallen to 42½ cents. There is no showing that the appellant did in fact rely upon Leviten's silence; but this is unnecessary, for the doctrine of ratification is independent of estoppel. However, the fluctuating market price of the commodity with respect to which the parties were dealing demonstrates the reasonable foundation of the requirement that the principal act promptly in electing whether to affirm or reject the agent's purchase made on his behalf. The principal by his silence should not be permitted to retain the chance to speculate at his agent's risk.

■ Ordinarily the question whether a principal has ratified by acquiescence for an unreasonable time after being informed of the agent's unauthorized act is a question of fact for the jury. But the evidence may be such as to make it a question of law for the court. Pickett v. Pearsons, 17 Vt. 470; Cairnes v. Bleecker, 12 Johns. (N. Y.) 300; Jacobs v. Moore, 195 App. Div. 452, 186 N. Y. S. 881; Mechem, op. cit. § 453. Under the circum-

stances disclosed by the evidence in the case at bar, the plaintiff's delay in expressing his intent to repudiate was so long continued that a contrary verdict would have had to be set aside. While no question of ratification was submitted to the jury, the defendant moved to dismiss the complaint on the ground that the evidence conclusively showed ratification. This motion should have been granted.

Accordingly, *the judgment is reversed, and the cause remanded.*