Harold Fertig, J.
The plaintiff brings this action for the return of $3,560 on two grounds, the first cause of action for conversion of said amount and the second for money had and received. Defendants deny the allegations of the complaint and counterclaim for the sum of $1,078.94, $340 of which *832 represents the difference between what the defendants received from the plaintiff and the loss they claim they incurred from the sale of the vehicle in question to a third party and the balance of $738.94 for certain repairs which the defendants claimed they made on the vehicle in order to complete the terms of the sale.
In June of 1975, the defendant Mafalda Dwojeski purchased for her son, Frank Figliolli, a Silver Cloud III Rolls Royce automobile, which was purported to be a 1964 model and which was later determined to be a 1962 model in excellent condition. It was purchased for the sum of $11,000, plus freight and customs charges, for a total of between $14,500 and $15,000.
Approximately three months prior to that time, the plaintiff, James Acuri, and the defendant, Frank Figliolli, had met and maintained a friendly relationship. Some time in October of 1975 both defendants, Frank Figliolli and his mother Mafalda Dwojeski, mutually agreed that she would sell the Rolls Royce motor vehicle. It was shortly thereafter when Frank Figliolli told James Acuri that he was interested in selling this car.
At the end of November of 1975, the plaintiff told his friend Frank Figliolli that he would be interested in purchasing the Rolls Royce and the parties orally agreed that the purchase price would be $9,500, $6,500 of which would be made in payments over a period of approximately six months. This period of time was indefinite, and it was further agreed that the balance of $3,000 would be paid at a later date after the purchaser was to have signed a series of notes for that amount.
In the beginning of January, 1976 a payment of $250 was made by plaintiff to the defendant Frank Figliolli, who in turn paid that sum over to his mother, the owner of the motor vehicle, and then for a period of time until May 19, 1976, payments of a total of $3,290 were made on account of the purchase price. In March of 1976, while the plaintiff was making the payments on account, the defendants had certain work done on the car to repair its transmission and tune up the motor, for the total cost of $738.94. On May 19, 1976 the defendants gave the plaintiff possession of the vehicle, the plaintiff claiming that it was for safekeeping and the defendants claiming that it was for the purpose of permitting a mechanic to examine the vehicle to determine its condition. *833 While the vehicle remained in the plaintiffs driveway he continued to make payments on account and paid an additional $270, until June 11, 1976, when the defendants requested the balance of the $9,500 which they claimed was due. On June 12, the defendants, after complaining to the police, recovered the vehicle, and it was then that the plaintiff first learned that the real owner of the car in question was Frank Figliolli’s mother, Mafalda Dwojeski. On that date the defendant, Mafalda Dwojeski, asked that the balance of the $9,500 be paid by July 12, 1976. The plaintiff made no commitment as to when the final payment would be paid but the matter was left open for further negotiation. Toward the end of June and subsequent to the June 12, 1976 date, the defendants advertised the vehicle for sale in the New York Times, offered the vehicle to Fleischman Motors and then sold the vehicle to Hempstead Motors for the sum of $5,600. This was done without any notification whatsoever to plaintiff.
Plaintiff contends that there was never any agreement between the parties and that the payments made should be returned since he never received anything for the sum of money advanced. He opposes the counterclaim on the grounds that the alleged agreement was too indefinite in its terms to be construed as an agreement between the parties and, in addition, that it did not comply with the requirements of the Statute of Frauds, not being in writing. (Uniform Commercial Code, § 2-201, subd [1]).
Firstly, the Statute of Frauds cannot be used by the plaintiff as a basis for recovery in his original cause of action since it is limited to cases in which a contractual obligation is the basis of such recovery. (Wellman v Holzer, 56 NYS2d 299, affd 271 App Div 775) and is a matter of defense. (Diaz v Tire Mart, 27 Misc 2d 24; Matthews v Matthews, 154 NY 288, 291-292.) It is not available to this plaintiff as a defense to the counterclaim since it has not been pleaded. (Crane v Powell, 139 NY 379; Nudelman v Insulite Co., 252 App Div 642; see, also, Palmer v Anderson, 243 App Div 618.)
The Statute of Frauds does not make the contract void but merely unenforceable. (Matter of Exeter Mfg. Co. [Marrus], 254 App Div 496.) In addition, the pleadings of both the plaintiff and the defendant allege the agreement, and a contract which does not satisfy the requirements of subdivision (1) of section 2-201 of the Uniform Commercial Code is enforceable if the party against whom the enforcement is sought admits in its *834 pleading or testimony that a contract for sale was made. (Uniform Commercial Code, § 2-201, subd [3], par [b].) Paragraph Third of the complaint states "defendants agreed to sell the vehicle to the plaintiff for a total sum of nine thousand five hundred ($9,500.00) dollars, with delivery of the vehicle to be made when the plaintiff has paid six thousand five hundred ($6,500.00) dollars of the purchase price.” That certainly alleges an agreement of sale even though the time of payment was not alleged. In any event, there was part performance of the contract, wich is "unequivocally” referable to the agreement (Geraci v Jenrette, 41 NY2d 660) and that partial performance involved a mutual participation by the parties. (Presti v Wilson, 348 F Supp 543.) Not only was there part payment by the plaintiff under the terms of the contract, but the defendants delivered the vehicle in question if only for a limited period of time for the purpose of having a mechanic examine or, as the plaintiff himself indicates, for safekeeping. That part performance further indicated the intent of the parties. (See Starr v Freeport Dodge, 54 Misc 2d 271.)
Even if the terms of the contract were indefinite and incomplete as to the time of performance it is now by mandate of the Uniform Commercial Code that such incomplete provisions are required to be settled by a determination according to a standard of "reasonableness”. (1 Williston, Sales, § 7-2, p 211; Uniform Commercial Code, § 2-309.) "The mere fact that one or more terms are omitted from the arrangement between the parties does not of itself make an otherwise valid agreement invalid.” (1 Williston, Sales, § 7-2, p 204.)
Under section 2-204 of the Uniform Commercial Code there are two tests which must be met for the determination of an agreement between the parties. One, it is essential that the parties intend to make a contract, and if there is that intention there is a reasonably certain basis for giving it an appropriate remedy and, two, the party asserting the intent to form a contract must proffer proof to indicate the requisite intent to the formation of the contract and a showing simultaneously that the facts proffered look to a contract and not to the preliminary negotiations between the parties. (See Uniform Comercial Code, § 1-101.)
Here, the parties intended a sale of a specific motor vehicle, at a fixed price. The defendants intended to sell and the plaintiff intended to buy that specific item of personal property. The only term which was indefinite was the period of *835 time during which payment was to be made, and that could be reasonably determined within the guidelines of their tentative understanding. (Uniform Commercial Code, § 2-309.) The agreement was made towards the end of November, 1975 and it was understood that $6,500 would be paid in approximately six months. Although mid-June, 1976 was a little beyond the actual six-month period, the court finds that it was still reasonably within the time period agreed upon. For the defendant to demand payment in full at that time was not reasonable since the parties had agreed that there would be a series of notes for the last $3,000 of the purchase price to be paid over a period of time after the original down payment was to have been paid.
Defendants contend, citing MacMurray v City of Long Beach (266 App Div 679) and Austin v House of Foret (54 NYS2d 540), that a party who has breached a contract may not recover the moneys paid on account of such contract. That principle is governing providing the seller had not previously repudiated the contract. (Uniform Commercial Code, § 2-711.) In this case the seller, before the purchaser was notified or had an opportunity to perform, resold the vehicle in question to a third party, thereby repudiating the contract. The plaintiff was not obliged to demand the property or tender the balance of the purchase price, but under the circumstances may bring an action for money had and received. (O’Kane v North Amer. Distilling Co., 171 NYS 275.) Nor is it apparent that the purchaser could have breached the contract at all since the terms of payment were indefinite and time for the down payment was approximate.
It is interesting to note that the original contract was between James Acuri and Frank Figliolli, the latter acting as an agent for his mother, and that she was an undisclosed principal at the time the contract was entered into between them. However, by her conduct she indirectly assented to becoming a party to the transaction, and by reason of that assent, her actions and the taking part in the negotiations at the later date, she is precluded from repudiating the transaction between the original parties. (Gillett v Whiting, 141 NY 71; 2 Williston, Contracts, § 278, p 256.) The seller in its counterclaim asks to be reimbursed for the difference between her selling price to Hempstead Motors and the agreed price with the purchaser. If the defendant expects to recover pursuant to section 2-708 of the Uniform Commercial Code — "Not *836 only is the burden of proof upon the seller to show that the buyer breached the contract, but also the seller cannot benefit by the provisions of § 2-708 where he has produced no evidence which shows what the market price is or the profit loss which he seeks.” (3 Williston, Sales, § 24-9, p 424; see, also, Matter of Bacon, 45 Pa D & C 2d 733.)
In the present case, the only testimony that the defendants gave was that the sale of the vehicle in question was made to Hempstead Motors for $5,600. This was an isolated sale. There was no testimony that it represented market value and there is no basis in the record for holding that the price of $5,600 on the single sale in July of 1976 represented the market value any more than that the $9,500 price which was agreed upon between the parties in November of 1975 or, for that matter, the seller’s original purchase price of close to $15,000 was the market value.
Although it has been held in Pollen v Le Roy (30 NY 549), that market value may be determined by the amount of a resale, in order for a seller to use that value the seller must take all proper measures to secure as fair and favorable a sale as possible and that sale must be made fairly and to the best advantage to the purchaser. Without a determination that the sale price represents either the market price in the case of an available market for the goods, or that the resale was a fair test of the actual value in the absence of an available market, that sale price cannot be determined as the market value. (Derami Inc. v Cabot Inc., 273 App Div 717.) In this case not only has the seller failed to meet the burden of proof to show that the buyer breached the contract, but the seller has also failed to produce any evidence which shows what the market price of the vehicle was and, therefore, the provisions of section 2-708 of the Uniform Commercial Code are not available. (American Broadcasting-Paramount Theatres v American Mfrs. Mut. Ins. Co., 48 Misc 2d 397, affd 24 AD2d 851, affd 17 NY2d 849.)
The only other possible remedy which might be available to the seller is under section 2-706 of the Uniform Commercial Code, which provides for the seller recovering the difference between the contract price and the amount of a resale. However, subdivision (3) of that section provides that if the sale was made privately and not by public auction, notice of that sale must be given to the purchaser. In this case no notice was given and that remedy is unavailable to the seller. (Uniform *837 Commercial Code, § 2-706, subd [1]; Foster v Colorado Radio Corp., 381 F2d 222.)
The court might also point out that the sale made to Hempstead Motors was most likely at a wholesale price and could not represent market value at retail in any event.
Since the seller has failed to prove a breach of contract on the part of the purchaser and, further, since no market value was proved by the seller, the seller’s counterclaim must fail. There is no dispute that the plaintiff paid the sum of $3,560 to the defendants and since the vehicle in question has been sold by the defendants they could not deliver it, in accordance with the contract terms and had repudiated the contract. The plaintiff shall, therefore, have judgment for $3,560, so much of the price which was paid under the contract, with interest from the 12th day of June, 1976, together with the costs and disbursements of this action.