David SHAW, Plaintiff,

v.

Stuart SHAW, et al., Defendants.

No. 04 Civ. 7224(LAK).

United States District Court,
S.D. New York.

Feb. 17, 2005.

Joseph D. Pope, Samantha L. Southall, Cohen Pope PLLC, New York City, for Plaintiff.

Ronald Cohen, Florrie Wertheimer, Werthheimer Associates, P.C., New York City, for Defendant Stuart Shaw.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This matter is before the Court on the motion of defendant Stuart Shaw ("Stuart") to dismiss the complaint.

*Facts*

*The Alleged Scheme*

The allegations of the complaint are assumed true for purposes of this motion.[1]

Margaret Shaw had four children: plaintiff David Shaw ("David"), Stuart, Denise Schure ("Denise") and Peter Shaw.[2] She was the sole owner of, and resided in, an apartment building located on East 67th Street. Stuart, an attorney, also resided in the building.

Mrs. Shaw was diagnosed with Parkinson's disease in the early 1970's. By the early 1990's, she had become physically incapacitated and increasingly unable to read, write or express herself. As Stuart lived in the building, he controlled all of her financial and legal affairs and managed the property.

Around 1993, Stuart, Denise and Denise's husband allegedly hatched a plot to appropriate the building to themselves and

---

1. Although Stuart's attorney has submitted a lengthy affirmation and exhibits in support of the motion, the Court declines to consider them or to convert the motion into one for summary judgment. *See* Fed.R.Civ.P. 12(b).

2. Peter died in 1995.

largely cut David out of the picture. They agreed among themselves that Stuart would cause Mrs. Shaw to transfer the building to Stuart without consideration, that the building eventually would be sold, and that Stuart, Denise and Denise's husband would share "the vast majority" of the proceeds.[3] On or about November 3, 1993, Mrs. Shaw in fact transferred the building to Stuart without consideration.[4]

At about the same time, Stuart told David that Mrs. Shaw's "health care costs were increasing and that he wanted [her] to transfer the [property] to him so she could qualify for Medicare [sic—Medicaid?]."[5] He assured David that "he would receive an equitable portion of the rental income" from the building, that the property would be sold after Mrs. Shaw's death, and that he would divide the sale proceeds "approximately equally between Stuart, Denise and David."[6] in reliance upon these assurances, David did not challenge the gratuitous transfer of the building from Mrs. Shaw to Stuart.[7]

Mrs. Shaw died in 2002.

In the spring of 2004, David learned from Stuart and Denise's husband that there was a $9.5 million offer for the property. Stuart then told David that he and Denise and her husband planned to distribute only about $300,000 of the sale proceeds to David, explaining that they had agreed in writing that they would retain the vast majority of the sale proceeds.[8]

### The Complaint

The complaint contains seven claims for relief as follows.

The first is a claim against Stuart for fraud, the theory being that Stuart's 1993 and subsequent representations to David that he would sell the building upon Mrs. Shaw's death and divide the sales proceeds approximately equally among David, Denise and himself were deliberate misrepresentations upon which David relied in not challenging the 1993 transfer. The sixth claim charges Denise and her husband with aiding and abetting the fraud while the seventh charges that the fraud was carried out pursuant to a conspiracy among all three defendants.

The second and third claims assert that Stuart failed to live up to his promise to pay David an equitable portion of the rental income on the building and that he has repudiated his promise to pay David approximately one-third of the sale proceeds, respectively. They are based on contract and promissory estoppel theories.

The fourth and fifth claims for relief are brought against Stuart, Denise and Denise's husband. They seek recovery on an unjust enrichment theory of an equitable portion of the rental income and of approximately one-third of the sale proceeds, respectively.

### Discussion

#### The Fraud Claims

 Stuart seeks dismissal of the fraud claims on the ground that the allegedly fraudulent statements are not pleaded with particularity as required by Fed.R.Civ.P. 9(b), that the statements were neither factual nor material to any pending transaction, and that promissory statements are not actionable for fraud. He argues also that they are barred by the statute of limitations. These contentions are frivolous.

---

3. Cpt. ¶ 28.

4. *Id.* ¶¶ 21, 24.

5. *Id.* ¶ 32.

6. *Id.* ¶¶ 34–35.

7. *Id.* ¶ 36.

8. *Id.* ¶¶ 40, 42–44.

· To begin with, the complaint alleges that "[i]n or around 1993, Stuart represented to David that he would sell the 67th Street Property upon Margaret's death and divide the sales proceeds approximately equally among Stuart, Denise and David." [9] While there is vagueness as to when in the ensuing years this statement was repeated, the quoted allegation is sufficiently precise as to the "where" and "when" requirements of Rule 9(b).

■ Second, Stuart's assertion that the allegedly fraudulent statement was "not a statement as to fact that was misleading," [10] which blends into his argument concerning statements of a promissory nature, misses the point. The claim here is that Stuart misrepresented his intention to do what he said he would do. That is actionable where there is some basis, beyond the mere failure to fulfill the promise, to believe that he did not intend to fulfill the promise at the time he made it. [11] In view of the allegation that Stuart and Denise agreed in 1993 to cut David out of the bulk of the profits from the building and Stuart's alleged admission that he had made such an agreement, there is far more here than a failure to fulfill a promise. The complaint adequately pleads facts which, if true, would demonstrate ·clearly that Stuart never intended to deliver on his promises to David.

· [3]· So far as the limitations argument is concerned, Stuart overlooks entirely the fact that fraud claims, under New York law, accrue when the fraud is, or with reasonable diligence could have been, discovered. [12] The complaint alleges that the fraud was discovered in 2004, well within the limitations period. The attack on the fraud claims therefore fails.

## A. The Contract Claims

Stuart mounts a multipronged attack on the contract claims.

### 1. Indefiniteness

■ David alleges two breaches: the failures to share rental income "equitably" and the sales proceeds approximately equally. Stuart claims that an alleged contract to pay an "equitable" share and "approximately" one third of the sales proceeds is unenforceable because it is too indefinite.

■ To be sure, a contract that is insufficiently definite to permit determination of what the parties have agreed is unenforceable. [13] But New York "has not applied the definiteness· doctrine rigidly," recognizing that "parties are often imprecise in their use of language." [14] "Striking down a contract as indefinite and in essence meaningless 'is at best a last resort.'" [15]

■ Here Stuart allegedly said that David would receive "approximately" one third of the sale proceeds. The use of the

9. Cpt. ¶ 48.

10. S. Shaw Mem. 3.

11. *See, e.g., Channel Master Corp. v. Aluminum Limited Sales, Inc.,* 4 N.Y.2d 403, 406–08, 176 N.Y.S.2d 259, 262–63, 151 N.E.2d 833 (1958); *Sabo v. Delman,* 3 N.Y.2d 155, 160, 164 N.Y.S.2d 714, 716, 143 N.E.2d 906 (1957).

12. N.Y. CPLR § 213, subd. 8.

13. *E.g., Matter of 166 Mamaroneck Avenue Corp. v. 151 East Post Road Corp.,* 78 N.Y.2d 88, 91, 571 N.Y.S.2d 686, 687, 575 N.E.2d 104 (1991); *Cobble Hill Nursing Home v. Henry & Warren Corp.,* 74 N.Y.2d 475, 482, 548 N.Y.S.2d 920, 923, 548 N.E.2d 203 (1989).

14. *Matter of 166 Mamaroneck Avenue Corp.,* 78 N.Y.2d at 91, 571 N.Y.S.2d at 687.

15. *Id.* 78 N.Y.2d at 91, 571 N.Y.S.2d at 687 (quoting *Heyman Cohen & Sons v. Lurie Woolen Co.,* 232 N.Y. 112, 114, 133 N.E. 370 (1921)).

word "approximately" in this context—the division of the proceeds of the mother's property "approximately" equally among her three surviving children-is sufficiently definite.[16] And while the promise to give David an "equitable" share of the rental income in other circumstances almost surely would be insufficiently indefinite, it cannot be said at this stage that this is so here. The complaint permits proof that the statement regarding the rental income was so close to that concerning the division of the sale proceeds as to permit the inference that the promise was to give David approximately one third of the rental income as well. Accordingly, the indefiniteness challenge is without merit, at least for purposes of a motion to dismiss.

### 2. Statute of Frauds

■ Stuart contends that the promise to divide the sale proceeds and rental income is barred by the statute of frauds. The statute relied upon, however, applies to the creation, grant, assignment, surrender or declaration of "[a]n estate or interest in real property."[17] It has no application to an agreement to share in sale proceeds or rental income.[18]

### 3. Promise to Make Gift in Future

■ Stuart contends that his alleged promise to pay David part of the rental and sale proceeds was one to make a gift in the future and therefore unenforceable. But this contention rests on a distorted view of the complaint. David's theory is not that Stuart promised a gift. It is that

Stuart understood full well that the proceeds of the property would be divided among the three surviving children in the absence of the proposed gratuitous conveyance by Mrs. Shaw to Stuart and that he made the promise to David to avoid having David attack or otherwise interfere with the conveyance. On that theory, David's forbearance was adequate consideration and there was no gift or promise of a gift.

### 4. Statute of Limitations

■ Stuart contends that David's contract claim is barred by New York's six year statute of limitations[19] on the premise that the claim arose in 1993.[20] The argument is preposterous.

The claim for breach of the agreement to pay David a share of the sale proceeds (which have not yet even been received by Stuart) did not accrue until 2004 when Stuart repudiated the agreement. The contract claim with respect to the rental proceeds is limited to the period since Mrs. Shaw's death in 2002.[21] Both claims therefore are timely.

The Court has considered Stuart's other arguments and found all to lack merit.

### Conclusion

The motion of defendant Stuart Shaw to dismiss the complaint is denied in all respects.

SO ORDERED.

---

**16.** *See Consolidated Blasting Corp. v. Colabella Bros., Inc.,* 10 M.2d 913, 917, 168 N.Y.S.2d 275, 278 (1957); *cf. Acuri v. Figliolli,* 91 Misc.2d 831, 834, 398 N.Y.S.2d 923, 926 (1977).

**17.** N.Y. GEN. OBLIG. L. § 5–703.

**18.** *E.g., Babcock v. Read,* 99 N.Y. 609, 610, 1 N.E. 141 (1885); *Davis v. Davis,* 123 Misc.

504, 505, 205 N.Y.S. 710, 711 (1924), *aff'd,* 213 App. Div. 846, 208 N.Y.S. 850 (4th Dept. 1925).

**19.** N.Y. CPLR § 213.

**20.** S. Shaw Mem. 6.

**21.** Cpt. ¶¶ 63–64.